JOHN ALLING *et al.*

*v.*

WILLIAM T. WENZEL *et al.*

*Filed at Ottawa May 14, 1890.*

1. CORPORATIONS — *stockholders — remedies — the statute considered.* Sections 8 and 25 of chapter 32, having reference to the same subject,— the liability of stockholders of corporations and the remedies by which to enforce the same,—should be so construed that each may stand and have effect given it.

2. Section 8 of the act relating to corporations for pecuniary profit, creates the liability of the stockholder and defines its extent, and also makes his assignee equally and jointly liable with him. Section 25 authorizes creditors of the corporation to bring suits in equity against the corporation and stockholders to enforce the liability of the latter if the corporation does or fails to do any act subjecting it to a forfeiture of its charter, or fails to make payment, or permits executions to be returned no property found after demand by the officer, or shall dissolve or cease to carry on its business as therein provided.

3. SAME—*liability of stockholders—its extent—device to escape liability—surrender of stock, etc.* The statutory liability of the stockholder is for his unpaid stock. To the extent his stock is unpaid he is liable for the debts and obligations of the corporation. When the liability is

once discharged by payment to the corporation, a subsequent assignee or purchaser will take the stock relieved from the burden imposed by the statute.

4. The capital stock of a corporation is a trust fund, which the directors may not give away or misappropriate to the prejudice of parties who may deal with the corporation; and any device by which members seek to avoid the liability imposed upon them by law, is void as to creditors, whether binding or not between themselves and the corporation. Nor is it in the power of the shareholders, by private agreement with the corporation, to make the shares of stock non-assessable, so as to excuse payment for such stock at its par value as against creditors.

5. Stockholders of a corporation can not defeat their liability to the creditors of the corporation by subscribing for the stock and then surrendering it to the corporation, and afterward taking the same from the corporation controlled by them, at a reduced value. The amount paid by them will, in equity, be treated as a payment upon their stock, and they will be held liable for their *pro rata* share to the creditors of the insolvent corporation. In such case the stock held by them will be treated as issued under their subscription, and they can not claim to be purchasers of the stock from the corporation.

6. Before a corporation has incurred liabilities by dealing with third parties, it may forfeit stock for non-payment of assessments thereon. So when a subscriber fails to take his stock, and never intends paying for the same, the corporation, having incurred no liabilities, may accept his surrender of the stock.

7. SAME—*assignment of stock—joint liability of assignor and assignee.* In order to create the joint liability imposed by section 8 of the general Incorporation law, the stock issued to a member must be assigned. A return of the stock to the corporation, and its subsequent repurchase as paid up stock, will not make the corporation jointly liable with the stockholder who surrenders his stock.

8. SAME—*dissolving corporation—on creditor's bill.* On a creditor's bill to enforce the stockholders' liability for unpaid subscriptions, the court, in its decree, dissolved the corporation. The corporation had no property or assets, and had long ceased to do business, and there was no useful purpose in keeping it alive: *Held,* no prejudicial error in decreeing the dissolution of the corporation.

9. REVERSAL OF JUDGMENT—*as to party not appealing.* Where a judgment or decree is a unit, a reversal at the instance of one party operates as a reversal as to all. So where there are several dependent judgments, and the principal one is reversed, the others can not be supported. But where the interests of the parties are several and independent, a reversal will operate only in favor of the party who procured it.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of Cook
county; the Hon. HENRY M. SHEPARD, Judge, presiding.

This was a bill in chancery, filed in the Superior Court of
Cook county, by William T. Wenzel & Co., for themselves and
the creditors of the Papillon Manufacturing Company, against
said company and its stockholders, to collect its assets and
wind up the corporation, under the act relating to corporations.
The bill alleged that the corporation was organized on or about
the 7th day of February, 1883, under the laws of this State,
with a capital stock of $600,000, and that on August 18, 1884,
one Potter recovered judgment in the Superior Court of Cook
county, against said corporation, for $10,325.80, and costs of
suit; that execution was issued thereon to the sheriff of said
county, which, after demanding payment, was returned no
property found; that on said last mentioned day the corpora-
tion was insolvent; that its debts were large and in excess of
its assets, and that it had ceased doing business, leaving its
debts unpaid, and that it was indebted to the complainants in
the sum of $420. The bill also alleged, that certain persons,
including appellants, were stockholders of the corporation;
that the stock held by said persons had not been fully paid for,
and prayed for a discovery in respect thereof, and that the
stockholders be required to pay enough to satisfy the debts of
the corporation not in excess of the amount remaining unpaid
upon their stock, for the appointment of a receiver, the dis-
solution of the corporation, and for other relief. By various
amendments other persons were made defendants, and many
other creditors came in by way of intervening petition. Sam-
uel D. Ward was appointed receiver, and the company was
ordered to transfer to him its assets.

Appellants, by their answer, admitted that on October 31,
1884, they each held a certain number of shares of such stock,

but denied that they held any which had not been fully paid for, or that they were liable as stockholders. Replications were filed, and on a hearing, in 1887, a decree was entered against appellants, which, on appeal to the Appellate Court for the First District, was reversed, and the cause remanded. See 27 Ill. App. 511.

On February 11, 1889, the cause was again referred to the master in chancery to take proof of claims against the company, and ascertain the amount necessary to be paid by said stockholders, respectively, not exceeding the amount of the stock liability, in order to realize a sum sufficient to pay the indebtedness of the company and costs and expenses of the litigation. Upon the incoming of the report, the court overruled exceptions thereto, and by its decree, July 16, 1889, found that the debts and liabilities of the corporation to the various creditors amounted to $86,603, and the costs and expenses to $1500, aggregating $88,103; and, also, that the following named persons, among others, were liable as stockholders upon the number of shares, and in the amounts following:

| STOCKHOLDERS. | No. Shares. | Amount. |
|---|---|---|
| Thomas C. Clark | 1275.22 | $127,522 |
| Louis C. F. Lotz | 1275.22 | 127,522 |
| Louis C. F. Lotz and J. P. Hoit | 200 | 18,500 |
| Louis C. F. Lotz and Louis Zaber | 50 | 4,500 |
| Benjamin F. Nourse | 1149.56 | 14,560 |
| Hiram W. Belding | 100 | 9,000 |
| William A. Stanton | 50 | 4,750 |
| A. C. Bartlett | 100 | 9,150 |
| W. M. Hibbard | 100 | 9,150 |
| John Alling | 350 | 29,150 |
| John Crerar | 50 | 4,150 |
| C. S. Shepard | 50 | 4,250 |
| James L. Woodward | 50 | 4,500 |
| George T. Williams | 25 | 2,000 |
| William S. Sidley | 25 | 2,000 |
| J. McGregor Adams | 50 | 4,000 |

The court further found that the persons named were liable for the unpaid portions of the capital stock so found, respectively, and that it was necessary to make an assessment upon the stock of the said company, which, with the prior payments that had been made on such capital stock,—upon which a less percentage had been paid of 17.55 per cent, intending an assessment of $17.55 upon each share of stock, including what had been previously paid thereon to the company. The assessment thus made produced the following result, viz.:

| NAMES OF STOCKHOLDERS. | Amt. necessary to be paid. |
| --- | --- |
| Thomas C. Clark | $22,412 |
| Louis C. F. Lotz | 22,412 |
| Louis C. F. Lotz | 2,016 |
| Louis C. F. Lotz and Louis Zaber | 377 |
| Benjamin F. Nourse | 20,173 |
| Hiram F. Belding | 755 |
| William A. Stanton | 627 |
| A. C. Bartlett | 905 |
| William G. Hibbard | 905 |
| John Alling | 905 |
| John Crerar | 27 |
| C. S. Shepard | 127 |
| James L. Woodward | 377 |

The court further found, that prior to the filing of the bill the corporation allowed an execution of a court of record to be returned, after demand, "no property found," and that said corporation had ceased doing business, leaving debts unpaid; that the assets of the corporation had been exhausted, and that the receiver had no money or property in his possession to pay such debts and liabilities. The court thereupon decreed that Margaret T. Clark, administratrix of the estate of Thomas C. Clark, deceased, pay to the receiver, in due course of administration, $22,412, and that the other persons named in the foregoing assessment pay the several amounts to the receiver as therein found, etc.

The master found that the capital stock of the corporation was subscribed for as follows:

| NAMES. | Shares. | Amounts. |
|---|---|---|
| Thomas C. Clark............................ | 2191⅔ | $219,166 67 |
| Louis C. F. Lotz............................ | 2191⅔ | 219,166 67 |
| Benjamin F. Nourse........................ | 1191⅔ | 119,166 66 |
| H. H. Belding.............................. | 100 | 10,000 00 |
| S. J. Sherwood ............................ | 100 | 10,000 00 |
| J. W. Streetor............................. | 200 | 20,000 00 |
| R. J. Wallace.............................. | 25 | 2,500 00 |
| | 6000 | $600,000 00 |

The master also found, that before any of the capital stock was issued, "by a peculiar system of book-keeping," the entire amount of the capital stock was pretended to be conveyed to the company, and was thereafter called "treasury stock;" that the company, and its officers and stockholders, acted upon the supposition that by these entries and transfers the company became the legal holder of the entire stock of the company, and that the company subsequently transferred the stock as its property; that of this so-called "treasury stock" Clark and Lotz each became the holder and owner of 1000 shares, and that under the decision of the Appellate Court in the case before referred to, they are each liable for the par value of such shares; that Nourse became the holder and owner of 1000 shares of the stock of the company; that he was unable to pay for the same, and was allowed to withdraw and cover the stock in the treasury; that this stock, on its surrender by Nourse, became a part of the unsold treasury stock, and its identity was lost; and found that Nourse was not thereby relieved from his liability on such stock subscription, and that he was liable for the par value of such 1000 shares; that J. P. Hoit was a stockholder to the amount of 200 shares, of the par value of $20,000; (of this, $1500 was paid, and the stock was sold and assigned by him to Louis C. F. Lotz, and said master finds

that said Lotz and said Hoit are jointly liable for the unpaid portions of their 200 shares;) that Louis Zaber was at one time a stockholder to the amount of 50 shares, of the par value of $5000, on which $500 was paid, and that he sold and conveyed this stock to Louis C. F. Lotz, and said master finds that said Lotz and Zaber are jointly liable for the unpaid portion of said 50 shares of stock; that 700 shares of stock were taken in the name of John T. May and others, who did not subscribe for and were not liable for the same, and that the liability for these shares should be proportionately divided among the original subscribers for the stock, so far as they afterwards failed to take the number of shares subscribed for by them, and the master thereupon apportions the liability therefor as follows:    Thomas C. Clark, 275.22 shares; Louis C. F. Lotz, 275.22 shares; Benjamin F. Nourse, 149.56.

Appellants Alling, Belding, Bartlett, Hibbard, Woodward, Stanton, Adams, Crerar, Shepard, Sidley and Williams appealed from the decree of the Superior Court to the Appellate Court, where the decree was affirmed, and they bring the case to this court by their further appeal.

Messrs. HUTCHINSON & LUFF, for the appellants:

After the transfer of the capital stock to the treasury of the corporation, it was held and sold as any other property of the company, and it is insisted that appellants purchased their stock in good faith, as fully paid.    Thompson on Liability of Stockholders, sec. 135.

The decree was erroneous in failing to hold Clark, Lotz and Nourse liable for all the stock subscribed for by them.    For all of the stock for which they subscribed and afterwards assigned to other parties they should have been held jointly liable with their assignees.    Rev. Stat. chap. 32, sec. 8; *Thompson v. Meisser,* 108 Ill. 359; Thompson on Liability of Stockholders, secs. 31, 234; 22 N. Y. 18.

Where there is joint liability, judgment must be against all or none. *Goodale* v. *Cooper*, 6 Bradw. 81; *Byers* v. *First Nat. Bank*, 35 Ill. 423.

A court has no power to decree a forfeiture of the charter, or the dissolution of a corporation at the suit of an individual, unless jurisdiction is given by statute. *Folger* v. *Insurance Co.* 99 Mass. 267; Angell & Ames on Corp. sec. 74; *Ormsby* v. *Mining Co.* 65 Barb. 360.

Mr. WALTER M. HOWLAND, for the appellees:

The statute gives courts of equity full power, on good cause shown, to dissolve or close up the business of any corporation. Rev. Stat. chap. 32, sec. 25.

As to what is "good cause shown," see *Mining Co.* v. *Mining Co.* 116 Ill. 170.

A court of equity has jurisdiction, in settling the affairs of a corporation, to bring before it all the stockholders and creditors, and determine their rights, adjust equities, marshal the fund and distribute it *pro rata*. *Eames* v. *Davis*, 102 Ill. 350.

A decree like the one here, if reversed as to one must be reversed as to all. *Enos* v. *Capps*, 12 Ill. 255; *Rees* v. *Chicago*, 38 id. 323; *Railway Co.* v. *Reno*, 123 id. 273.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This bill is filed by and in behalf of creditors of an insolvent corporation,—the Papillon Manufacturing Company,—and its stockholders, to subject their unpaid subscriptions for stock to the payment of the debts of the company, and to wind up and close its affairs.

Section 8 of the act in reference to corporations for pecuniary profit creates a liability against stockholders for the amount unpaid upon their capital stock. That section provides: "Each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock

held by him, to be collected in the manner herein provided."
And further: "No assignor of stock shall be released from any
such indebtedness by reason of any assignment of his stock,
but shall remain liable therefor, jointly with the assignees,
until the said stock shall be fully paid.   *   *   *   Every as-
signee or transferee of stock shall be liable to the company for
the amount unpaid thereon, to the extent and in the same
manner as if he had been the original subscriber."   Section 25
of the act provides, that "if any corporation or its agents shall
*   *   *   allow any execution or decree of any court of record
for the payment of money, after demand made by the officer,
to be returned no property found, or to remain unsatisfied for
not less than ten days after such demand, or shall dissolve or
cease doing business, leaving debts unpaid, suits in equity may
be brought against all persons who are stockholders at the
time, or liable in any way for the debts of the corporation, by
joining the corporation in such suits; and each stockholder
may be required to pay his *pro rata* share of such debts or
liabilities to the extent of the unpaid portion of his stock, after
exhausting the assets of such corporation."

These two sections, having reference to the same subject,—
the liability of stockholders, and the remedies by which to en-
force the same,—should be so construed that each may stand,
and effect be given to the provisions of each.   The first section
creates the liability of the stockholder and defines its extent,
and also makes his assignee equally and jointly liable with
him.   Section 25 authorizes creditors of the corporation to
bring suits in equity against the corporation and stockholders
to enforce the liability of the latter, if the corporation does, or
fails to do, any act subjecting it to a forfeiture of its charter,
or fails to make payment, or permits executions to be returned
no property found, after demand by the officer, or shall dis-
solve or cease to carry on its business, as therein provided.

The liability of the stockholder is for his unpaid stock.   To
the extent it is unpaid, he is liable for the debts and obliga-

tions of the corporation. When the liability is once discharged by payment to the corporation, a subsequent assignee or purchaser will take the stock relieved from the burden imposed by the statute. *Thebus* v. *Smiley*, 110 Ill. 316.

The first assignment of error presents the question whether the stock of appellants was not full paid up stock, and therefore not liable to assessment. It appears from the evidence, that before the issue of stock, or at least before the issue of a portion of it, stock was transferred upon the books of the company to the company itself, apparently under the belief that the company thereby became the legal holder and owner thereof, and that it could thereafter be put upon the market at less than its par value. It was therefore called "treasury stock." On this theory the corporation sold a great portion of such stock to its subscribers at prices ranging from five to twenty per cent of its par value. On February 12, 1883, the following order or resolution was entered upon the books of the corporation: "On motion of Mr. Nourse, the market value of the capital stock was placed at twenty cents per dollar until further notice." Mr. Holland testified as follows: "The cash payment, the price we had sold the stock at,—that is, to be paid in the first payment,—was $10 a share. We afterwards raised the price to $20 a share,—$20 paid in. The market price was fixed under the by-laws." He then quotes the resolution before mentioned, and says: "Stock was sold under that order to Mr. Alling and to Mr. Clark. Prior to that time we had sold at five cents and ten cents on the dollar. I sold Mr. Dunham his stock. He paid ten per cent." Of this treasury stock, Clark, Lotz and Nourse each became the holder and owner of, or subscriber for, 1000 shares, aggregating one-half of the capital stock of the company. Appellants now contend, that after this transfer of the capital stock to the treasury of the corporation, it was held and might be sold as any other property of the company, and that they purchased their stock in good faith, as full paid stock, and that they are not liable to

assessment under the statute. It is also contended, that the certificates of stock indicated on their face that the stock was paid up stock. These certificates read: "This is to certify that . . . . . . . . . . is the owner of 100 shares of the capital stock of the Papillon Manufacturing Company," etc. Receipts were given to some of the purchasers, one of which reads:

"PAPILLON MANF. Co., 50 Mich. Ave.,
CHICAGO, *February 16, 1883.*

"*William G. Hibbard, Esq.:*

"DEAR SIR—I hereby acknowledge the receipt of your ck., number 3411, five hundred dollars, ($500,) in full for one hundred shares of stock, certificate No. 47.

"Yours respectfully, .          L. C. F. LOTZ, *Treasurer.*"

The question does not arise, here, between the corporation and its stockholders, but between the insolvent corporation and its creditors. In *Union Mutual Life Ins. Co.* v. *Frear Stone Manufacturing Co. et al.* 97 Ill. 537, it was held, that the capital stock of the corporation is a trust fund, that the directors may not give away or misappropriate to the prejudice of parties who may deal with the corporation, and that any device by which members of the corporation seek to avoid the liability imposed upon them by law, is void as to creditors, whether binding or not as between themselves or between them and the corporation. Nor is it in the power of the shareholders, by private agreement with the corporation, to make the shares of the stock non-assessable, so as to excuse payment for such stock at its par value, as against creditors. *Melvin* v. *Lamar Ins. Co.* 80 Ill. 446; *Zirkel* v. *Joliet Opera House Co.* 79 id. 334.

The law sought to be enforced in this case is intended to protect persons dealing with corporations, and it should not, if susceptible of any other, receive such a construction as will defeat the intention of the legislature. It is clear that each of these parties, in procuring stock from the corporation, knew that the corporation was not receiving par value therefor.

They purchased stock and took it of the company at from one-twentieth to one-fifth of its face value, thereby reducing the capital of the company, in fact, to one-fifth or one-twentieth of its authorized capital, upon the faith of which the public were authorized to deal with it. The plan pursued in this case was but a device to evade the law, and to defeat its useful and wholesome provisions. Clark, Lotz and Nourse having each subscribed for a greater number of shares of the capital stock, those actually taken by them will be held as though issued to them under their several subscriptions, and they can not be heard to say that they are purchasers, from the corporation, of paid up stock. They can not defeat their liability to the creditors of the corporation by subscribing for the stock and then surrendering it to the corporation, and taking it from the corporation, which they controlled and managed, at a tenth or a twentieth of its value. The amount paid by them will, in equity, be treated as a payment upon their stock, and they will be held liable for their *pro rata* share to the creditors of the insolvent corporation.

It is also claimed that the decree is erroneous for the reason that Clark, Lotz and Nourse are not held liable for or upon all the stock originally subscribed for by them, respectively. As before shown, Clark subscribed for $2191\frac{2}{3}$ shares, Lotz for $2191\frac{2}{3}$ shares, and Nourse for $1191\frac{2}{3}$ shares, of the par value of $100 each,—which were surrendered and thereafter called "treasury stock." Subsequently, Clark and Lotz each subscribed for and took 1000 shares of such stock, and Nourse also subscribed for 1000 shares, but failed to pay for the same. Still, subsequently, appellants, with others, purchased of the corporation directly, at prices ranging from five to twenty per cent of the par value, all of the stock of the company except the 3000 shares taken by Clark, Lotz and Nourse, and 700 shares which remained unsold. The decree required Clark, Lotz and Nourse to contribute their *pro rata* share upon the 1000 shares subscribed for and taken by each of them, and

also upon the 700 shares remaining unsold. The insistence is, that Clark, Lotz and Nourse should be held jointly liable with appellants upon the stock purchased by the latter of the company. This position is based upon section 8 of the act before quoted, which is : "No assignor of stock shall be released from any such indebtedness by reason of any assignment of his stock, but shall remain liable therefor jointly with the assignee," etc.

The answer to this contention is apparent. Appellants are not the assignees, nor is either of them, of Clark, Lotz or Nourse. The latter are not the assignors of the stock held by appellants, or either of them. To create the joint liability imposed by the statute, the persons sought to be charged jointly with the holder of the stock must have been the assignors of the stock. What Clark, Lotz and Nourse did do was to surrender the subscriptions made by them to the corporation, and which were attempted to be accepted by the corporation, and the stock represented by such subscriptions held by it for sale as the property of the company. The corporation is unquestionably liable to its creditors, and the acceptance by them of the surrender of the subscriptions could not add to such liability. It must be apparent that Clark, Lotz and Nourse are not, within the meaning of the statute, the assignors of the stock which appellants purchased of the company. The liability of Clark, Lotz and Nourse, if any exists, in respect of the stock held by appellants, arises out of their original subscription to the capital stock of the company, and not from their relation thereto as assignors thereof. No creditor of the corporation is here complaining of the decree, or insisting upon the liability by reason of such subscription. When the matter of such liability is properly raised, a very different question will be presented for our consideration, and in respect to which we now express no opinion. Appellants, as before seen, took their stock from the company directly, at less than its face value, and are personally liable, and they can not complain

that others may also be liable at the suit of the creditors of the corporation.

No discussion need be here had of the effect of a *bona fide* surrender of stock, and an acceptance thereof, upon creditors who become such after the acceptance of such surrender; but it may be said that appellants are in no position to complain of the surrender in this case. If there could arise equities entitling appellants to relief as against such original subscribers, the state of the pleadings is not such as to authorize a decree in their favor.

It is next complained that the decree is erroneous in that it dissolves the corporation. All its property and assets were gone, and it had long ceased to transact business. It was already defunct, and it is not shown that it had anything, tangible or intangible, of any value, or that its continued existence would be of the slightest advantage to any of its stockholders. It is not seen that the decree in this respect was prejudicial to appellants, or that the corporation being kept alive could serve any useful or proper purpose. If it was here complaining, the answer would be that its dissolution was authorized by the statute. *St. Louis and Sandoval Coal and Mining Co. et al.* v. *Sandoval Coal Mining Co.* 116 Ill. 170.

Appellant Dunham assigns for error that this decree was improperly rendered as to him, for the reason that he did not appeal from the first decree rendered, which was reversed, upon the appeal of others, in the Appellate Court. As the first decree required him to pay a much greater amount than the present decree does, it is not observable in what way he was injured. But aside from this, when a judgment or a decree is a unit, a reversal at the instance of one party operates as a reversal as to all. In this case the reversed decree found the whole sum to be raised from the unpaid subscriptions, and the part each defendant was to contribute, and its reversal made it necessary to find a different gross sum to be thus raised. This, of course, changed the sum each was to pay,

and a reversal upon the appeal of any one of the defendants necessarily vacated the decree as to all. "Where there are several dependent judgments, and the principal one is reversed, the others can not be supported." (2 Saunders, 101 a; *McJilton* v. *Love*, 13 Ill. 486.) Where, however, the interests of the several parties against whom a judgment and a decree are rendered are several and independent, a reversal will operate only in favor of the parties who procure it. (*Enos* v. *Capps*, 12 Ill. 255; *Rees* v. *Chicago*, 38 id. 323; *Pittsburgh, Ft. Wayne and Chicago Ry. Co.* v. *Reno et al.* 123 id. 273.) It is manifest that this appellant can not complain of the decree in this respect.

We find no substantial error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*