HOEFT *v.* KOCK.

CORPORATIONS—SALE OF STOCK—MISREPRESENTATIONS.

>The signing by an officer of a corporation of a certificate of stock reciting that the capital stock is $25,000, when it was in fact $50,000, does not render him responsible to the purchaser of the stock for misrepresentations as to the amount of stock and its value, made by directors to induce the sale, where it does not appear that he knew of such representations.

Error to Wayne; Donovan, J.    Submitted February 8, 1899.    Decided March 6, 1899.

Case by August Hoeft against Jacob Kock, Charles Uelsmann, Gustave Rogge, and Albert Clemens, for alleged misrepresentations in the sale of corporate stock.    From a judgment for plaintiff, defendants Kock and Uelsmann bring error.    Reversed.

*Thomas Hislop,* for appellants.

*Walter Barlow,* for appellee.

MOORE, J.    The plaintiff brought suit against the defendants to recover from them a subscription of $2,000 to the capital stock of the American Brass & Metal Works, claimed by him to have been obtained by fraudulent representations made to him as to the value of the stock, the amount of the stock of the company, and the profitableness of the business.    The plaintiff obtained a judgment, and from that judgment defendants Kock and Uelsmann have appealed.    It is their claim that, giving the fullest effect to the testimony offered upon the part of the plaintiff, he has not established a cause of action against the appellants, and a verdict should have been directed in their favor.

The record shows that in May, 1894, plaintiff bought 200 shares of stock, for which he paid $2,000. There is not a word of testimony in the record indicating that defendant Uelsmann made any representations to plaintiff, or authorized any person to make them for him, which influenced the plaintiff in the purchase of stock. It is urged that, as Mr. Uelsmann signed the certificate of stock, that fact, taken in connection with the other testimony, and the further fact that the certificate recites that the capital stock of the company is $25,000, when it is claimed that the capital stock was $50,000, makes him liable. · This contention has no force, because it is not shown Mr. Uelsmann made any representations to the plaintiff, or knew of any representations made by any one else, either as to the amount of the stock or its value. Upon the record as it stood, a verdict should have been directed in favor of Mr. Uelsmann.

The plaintiff obtained his stock in the company, in May, 1894, after going through the plant, which was then a going concern, employing 80 to 100 men. February 22, 1895, he was present at a stockholders' meeting, and was elected a director of the company, and afterwards participated in its management. He· heard read the annual reports of the company, voted to secure loans and give mortgages, and remained with the company until September, 1896, when its affairs were such the company passed into the hands of a receiver.

It is claimed that Mr. Kock represented to the plaintiff that the affairs of the company were in good shape and that it was making money, and that his representations amounted to a fraud. Mr. Kock denied he made any representations whatever, or· authorized any to be made, to induce the plaintiff to purchase the stock. For the purposes of this case it must be assumed he did make the representations claimed. What is there in the case to show that in May, 1894, the affairs ·of the company were not as represented? The record shows the business first started as a small, private enterprise. Then a company

was organized with $5,000 of capital stock.  The business continued to grow, and the capital was increased to $25,-000, all paid.  Before plaintiff bought his stock, a resolution was adopted to increase the stock to $50,000.  The record is silent as to the value of this stock in May, 1894. It does show that in 1892 one of the witnesses paid 12 per cent. premium for his stock.  It also shows, during the stringent times following 1893, the need of more than $25,000 of paid-up capital to do the business they were doing.  The fact the company used to get 4 months' credit in which to pay its bills for brass, when later it was required to pay them within 30 days, and was obliged to pay from 1 to 7 cents a pound more for brass, without obtaining corresponding advances in the price of products, and the ever-increasing difficulty in making collections, will go far to account for the subsequent failure of the business.

It is said the falsity of the statements made by Mr. Kock is shown by the annual reports, and counsel says the report for January, 1892, shows that the debts of the company were $10,433, and credits $4,480, and that of January, 1894, shows that the debts were $19,733, and the credits $8,629, and that this demonstrates that the business was not successful.  This argument omits some very important items in the annual statements.  In the statement for January, 1892, it is stated that the capital stock paid in was $20,750, and the value of the personal property was $29,180, while the January statement in 1894 shows that the capital stock paid in was $31,820, and the amount of the personal estate was $47,503.  The record does not disclose that what Mr. Kock said to Mr. Hoeft was not true, and a verdict should have been directed in his favor.

Judgment is reversed, and new trial ordered.

Grant, C. J., Montgomery and Long, JJ., concurred. Hooker, J., did not sit.