### HOEFT *v.* KOCK.

1. Judgment — Appeal and Error — Joint Defendants — Default.

    When a judgment against joint defendants, a part of whom appeal, is reversed, the cause must be tried again *de novo* as to other defendants who defaulted and suffered judgment to be entered against them; they stand on the same footing as the appealing defendants.

2. Same—Motions.

    It was erroneous to wait more than ten years after reversal of a judgment as to appealing defendants and then cause judgment to be entered without notice as to others who defaulted; a second trial having resulted in a verdict and judgment against plaintiff's claim.

3. Same—Courts—Vacating Orders—Notice.

    While the regular way to vacate such a judgment is by motion and on notice to the adverse party, the court did not err in vacating it *ex parte* without notice, and the action might have been taken upon the court's own motion.

Certiorari to Wayne; Donovan, J. ( Docket No. 100.) Submitted April 12, 1912. Decided July 22, 1912.

Case by August Hoeft against Jacob Kock, Charles Uelsmann, Gustave Rogge, and Albert Clemens for fraud. Orders vacating a levy on property of defendant Rogge, and recalling execution, are reviewed by plaintiff on certiorari. Affirmed. ·

*William Look*, for appellant.

*Washington I. Robinson*, for appellees.

Steere, J. This is a certiorari to the Wayne county circuit court to review its action in making two certain orders dated May 3 and 27, 1911, which, together, briefly

stated, recalled an execution issued in the above-entitled cause, stayed a levy made thereunder, released such levy, and declared such execution null and void, and denied a motion to reconsider and vacate the same. The judge who made such orders having retired from the bench, the return to this writ was prepared by the clerk of the court, who attested that various copies of the files and records in the case, including plaintiff's affidavit for writ of certiorari, constituted all of the proceedings of said court to be found in relation to this matter, which attestation was certified by the presiding judge of said court. The case, in some of its varied phases, has twice been before this court. It was commenced in 1896 by plaintiff against four defendants, Jacob Kock, Charles Uelsmann, Gustave Rogge, and Albert Clemens. Its purpose was to recover damages from said defendants by reason of fraudulent misrepresentations alleged to have been made to plaintiff by defendants, acting in conjunction, which induced him to purchase a certain amount of stock in the American Brass & Metal Works, of Detroit, in which defendants were stockholders and officers. Personal service was had on all the defendants. Defendants Kock and Uelsmann appeared by attorney and pleaded. Defendants Rogge and Clemens did not appear in person or by attorney, and their default was duly entered on May 14, 1897. In October, 1897, trial was had before a jury in the Wayne county circuit court, resulting in a verdict against all said defendants for $2,398, upon which judgment was entered October 29, 1897. Defendants Kock and Uelsmann, by writ of error, removed said cause to this court, and the judgment was reversed on March 6, 1899, the opinion being reported in 119 Mich. 458. On March 23, 1899, remittitur was filed in Wayne circuit court, and a new trial was had in April, 1899, resulting in a verdict, by direction of the court, in favor of defendants, from which plaintiff appealed to this court by writ of error, and on March 16, 1900, the judgment in defendants' favor was affirmed by an opinion found in 123 Mich. 171. Thereafter, from March

16, 1900, to June 13, 1910, being approximately 10 years, matters remained dormant and no further proceedings were taken, when plaintiff, through counsel who had not before appeared in the case, applied to the court for, and obtained a judgment against defendants Rogge and Clemens, on the strength of the default entered in the spring of 1897, for $3,910.07. An execution was issued thereunder on June 30, 1910, returnable July 30, 1910, by virtue of which, on July 28, 1910, levy was made upon certain real estate in the city of Detroit, belonging to or claimed by defendant Rogge. Due return with certificate of levy was indorsed by the sheriff, dated February 7, 1911. On April 28, 1911, a new execution was issued by order of the court, on application duly made, for the reason that the previous levy made on real estate was inadequate and certain property of which the sheriff had no knowledge at the time of making his first levy had since been learned of by him. This second execution was made returnable May 20, 1911. Levy was made under it May 2, 1911, on certain goods and chattels of said defendant Rogge and on his interest in certain other real estate. Thereupon said Rogge, on May 3, 1911, without notice to the plaintiff or his attorney, filed and presented to the judge who had rendered the default judgment aforesaid and had authorized the issuance of said executions an affidavit setting forth that this suit was begun on September 9, 1896, and judgment taken against him by default on October 29, 1897, being the time of the first trial, for the sum of $2,-398; that since then he had continuously been a resident of Wayne county and had received no notice of any kind, or service of process for renewal of said judgment, and first learned of the same when levy was made by the sheriff under the alleged new judgment on May 2, 1911. On May 3, 1911, on such *ex parte* application, without notice, an order was made recalling execution and staying the levy as aforesaid. Subsequently a motion was made by plaintiff's attorney to vacate said order, which motion was heard and argued, whereupon the court denied such mo-

tion to vacate, and, in addition thereto, ordered the release of said levy and execution, and declared such judgment and execution null and void, stating that he did so—

"After hearing said motion and the oral arguments of the counsel for the respective parties, and being fully advised in the matter, and being now convinced that the judgment taken by the plaintiff against said Gustave Rogge, one of the defendants in said cause, on the 14th day of June, 1910, upon default, is void."

It is the contention of counsel for plaintiff that upon reversal of the original judgment against all four defendants on March 6, 1899, ordering a new trial, on filing a remittitur, the cause stood as to all the defendants, whether joining in the appeal or not, as though it had never been tried; that upon the first reversal, after said cause was returned for retrial in the circuit court, plaintiff could and did make severance of defendants, and proceed against defendants Kock and Uelsmann, who had appeared and pleaded, leaving the case standing, in the meantime, by default, without judgment as to defendants Rogge and Clemens; that he could, at such time as he saw fit, subsequently take judgment by default previously entered against defendants Rogge and Clemens, without notice, which was regularly done on June 13, 1910; that he was entitled to execution therefor, and the *ex parte* order of the circuit judge recalling such execution was without authority of law, as well as his subsequent action in denying plaintiff's motion to vacate the same, and adjudging, in that connection, that said default judgment was null and void.

It is the claim in behalf of defendants that the original judgment against defendants who did not join in the appeal remained unaffected by the appeal taken by others until it became barred, 10 years later, by the statute of limitations; that, if not, the decisions and judgment of this court, as to right of plaintiff to maintain the action, inured to the benefit of all the defendants and the matter is *res adjudicata;* that plaintiff, by long delay under the circumstances surrounding this litigation, is guilty of

laches; that the court, when other and new counsel appeared in the case, having inadvertently granted the judgment, on his attention being subsequently called to the oversight, as manifest from Supreme Court decisions and the records of his own court, had full authority, without notice and of his own motion, to correct the mistake, and declare the unauthorized judgment void.

The judgment rendered upon the first trial, reversed March 6, 1899 (119 Mich. 458, 78 N. W. 556), was entire and indivisible against all four defendants and jointly binding.   The general rule that a joint judgment when reversed as to one is reversed as to all, and the case stands for trial *de novo* as though it had never been tried, was early announced in this State.   *Powers* v. *Irish*, 23 Mich. 429; *Matteson* v. *Nathanson*, 38 Mich. 377.   Some exceptions and modifications to this general rule have since been made.   *Sutherland* v. *Ingalls*, 63 Mich. 620 (30 N. W. 342, 6 Am. St. Rep. 332); *Moreland* v. *Durocher*, 121 Mich. 398 (80 N. W. 284).   In *Hall* v. *Calhoun Circuit Judge*, 123 Mich. 555 (82 N. W. 229), it was held, where "judgment is reversed and a new trial ordered," the effect is to render a new trial in the court below necessary before any judgment can be enforced in favor of a plaintiff.   It is said that, after the first reversal of the cause, plaintiff severed the defendants and proceeded on the second trial against Kock and Uelsmann only, upon the theory that they were individually liable.   The published report of the decision in this court, reviewing the second trial, does not indicate any special severance or new theory of individual liability which presented the relative status of defendants in any different light.   It is the same case, with the same title, retried in the court below, and verdict directed for defendants and sustained on review.   123 Mich. 171 (81 N. W. 1070, 81 Am. St. Rep. 159).   An examination of the printed record of both trials filed in this court discloses no change of theory, pleading, or status of the parties except the following statement in the second bill of exceptions:

"The defendants Jacob Kock and Charles Uelsmann each pleaded the general issue. The defendants Gustave Rogge and Albert Clemens did not appeal in the case, and their defaults were duly entered and judgment was entered against them."

Whether the judgment thus referred to is the joint judgment on the first trial or some separate judgment by default, of which no record appears anywhere in the cases before us, is a matter of conjecture. The printed record referred to was filed in this court in 1899. If such statement as to the existence of a judgment is to be accepted, it had outlawed when the judgment now under consideration was entered. The declaration in the case was the same in both trials, on the theory of a conspiracy and co-operation between defendants to deceive and defraud plaintiff and induce him to purchase stock which was an overissue, worthless, and in violation of law. In their briefs plaintiff's counsel strenuously insisted it was a joint conspiracy, based on co-operation, urging that—

"It required the combined efforts and acts of them all to fully accomplish the fraud upon him. The acts and conduct of each of the defendants in the whole matter are so interwoven with each other that proof of the acts and conversations of one when taken in connection with the parts the other played in the transaction would bind them all. * * * The acts and representations of all the defendants were fraudulent and the conduct of each of them is so connected with that of the others that it is clear that they understood what was to be represented by each other in selling the stock to the plaintiff."

On this theory, urged by counsel and borne out by the pleadings, a proper decision of the case involves, and must apply to, all the defendants, and the whole matter, so far as the merits of the controversy are concerned, is res adjudicata as to all, provided those in default, who did not join in the appeal, are entitled to the benefit of the appellate court's decisions.

It is laid down as a general rule in 23 Cyc. p. 808 that—

"Where one defendant suffers a default, while the

other pleads and goes to trial and defends successfully on a ground not personal to himself, his success will inure to the benefit of the defaulting defendant, and judgment must be rendered for both. On the other hand, if plaintiff obtains a verdict against defendant who answers, he is then entitled to a joint judgment against all the defendants. And it would be erroneous and improper to render judgment against that defendant alone who answered; both must be joined in the judgment as in the action, although it is proper and usual to enter an interlocutory judgment against defendant who defaults, to await the trial of the issue as to the other."

In this case the ultimate result of the trial of the issue as to the others who appealed was no cause of action. While it has been recognized as a general rule that only the rights of the parties before the court can be adjudicated on appeal, it has, nevertheless, been held that where the parties appealing and those not appealing stand upon the same ground, and their rights are involved in the same question and equally affected by the same judgment, the court will consider the whole case and settle the rights of all parties even though defendants not appealing are in default. *Wood* v. *Cullen*, 13 Minn. 394 (Gil. 365); *Alling* v. *Wenzel*, 133 Ill. 264 (24 N. E. 551); *Tompkins* v. *Wiltberger*, 56 Ill. 385; *Mohr* v. *McKenzie*, 60 Ill. App. 575; *Bradford* v. *Taylor*, 64 Tex. 169. This rule, applied to the case at bar, would seem to dispose of it.

The disposition of this case, however, does not necessarily turn on an absolute application of the principles above stated. They arise contingently. If they do apply, the rights of defendants are *res adjudicata*, and the default judgment in question is invalid. If they do not apply, and the previous judgment against defendants stood, it was outlawed. It could not in any case have been renewed without resuit and service of process. A judgment without notice on an old default upon which judgment had once been taken was a nullity.

After affirmance of final judgment, on a verdict directed for defendants at the second trial, counsel who had been

actively in charge of the litigation up to that time apparently regarded it as ended. We discover no substitution of attorneys in the record, but, at the expiration of a decade, new counsel ask the court for a judgment by default and obtain it. Such a proceeding is largely formal and routine work, often perfunctory, and hastily disposed of in the confusion of business. With no one to raise any questions against what is asked, inadvertent and erroneous action may result. When it becomes manifest to the judge on investigation that such action was through a misunderstanding, without authority of law and void, we think it was an inherent power of the court, on application of a party interested or on its own motion, to revoke such action and declare it a nullity.

In all fairness due notice should be given to the party against whose interest the contemplated action is proposed, but in this case ultimately, and before final disposition of the case, all parties in interest were heard and the questions argued and considered.

The judgment of the learned circuit judge is affirmed, and the writ denied.

MOORE, C. J., and MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.