ROOD v. WHORTON.

(Circuit Court of Appeals, Seventh Circuit.   May 4, 1896.)

No. 277.

CORPORATIONS—SUBSCRIPTIONS TO STOCK—APPLICATION OF PAYMENTS.

The A. Co. was organized with a capital of $1,000,000, in 40,000 shares, of $25 each, all of which were subscribed for by the eight incorporators of the company.   No cash was paid on the subscriptions, but property, valued at $220,000, was conveyed to the company in payment for the stock, without application to any specific shares.   Immediately after the organization of the company, it was agreed by all the subscribers, at a stockholders' meeting, that 16,000 shares should be contributed by the subscribers, to secure working capital, and that such shares should be issued to trustees who were authorized to sell the same, as full paid and nonassessable stock, at not less than $3 per share, two-fifths of the proceeds to be paid to the incorporators, and three-fifths into the treasury of the corporation.   It did not appear that enough of the stock so contributed was sold to equal $220,000 at par value; but defendant purchased from one W., who was engaged on behalf of the company in selling the stock, 800 shares, in the belief that they were owned by W., and were fully paid, as they were stated on their face to be, having no knowledge or notice of the transactions leading to the sale of the stock or of the facts in regard to its payment.   Afterwards, the company having become insolvent, a receiver of its property sued defendant for the amount of an assessment of $15 per share on the subscriptions to the stock.   *Held,* that the proceedings for the sale of the stock, as full paid,

must be construed as an appropriation, by the shareholders and the corporation, of the unapplied credit of $220,000 to the 16,000 shares contributed for sale, or to such of them as should be issued; and, as it did not appear that enough of the stock was sold to equal the $220,000, the stock purchased by defendant, in the belief that it was full paid, must be treated as being so in fact, and, accordingly, the defendant was not liable for the assessment.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

This is a suit at law brought by the plaintiff in error, as receiver of the American Iron Company, against John H. Whorton, the defendant in error, in the circuit court of the United States for the Eastern district of Wisconsin, to recover from the defendant the sum of $12,000, being the amount of an assessment of $15 per share upon 800 shares of the capital stock of that company standing in his name upon its books, which assessment was levied by order of the circuit court of Marquette county, in the state of Michigan, in a suit therein pending, at the instance of creditors of that company, for its dissolution and the winding up of its affairs.

The suit was tried in the court below, without the intervention of a jury, which was waived by written stipulation of the parties, and upon the trial judgment was rendered in favor of the defendant in error, to review which judgment this writ of error is prosecuted. The opinion of the court below is reported in 67 Fed. 434.

At the trial, the court filed its findings of fact and conclusions of law, as follows:

(1) That the American Iron Company is a mining corporation, which was organized on the 7th day of March, 1887, under the laws of the state of Michigan, authorized to have, and having, a capital stock of one million dollars, divided into forty thousand shares, of twenty-five dollars each; and that all of the said shares were, at the time of its organization, subscribed for by the incorporators thereof, who were eight in number, in equal proportions; that is to say, five thousand shares thereof were then and there subscribed by each of the said eight incorporators, which said incorporators were the following named persons, viz.: C. R. Ely, J. A. Jochim, T. F. Donahoe, P. H. Donahoe, W. H. Johnston, A. J. Rich, W. Walton, and E. H. Fowle. That, at the time of the said organization of the said incorporation, there was paid in to the said company, on account of the said subscriptions to the said stock, the sum of $220,000, which payment was made by the transfer to the said corporation of certain property, which was accepted by the said corporation at the said price, as part payment of the said subscriptions to the said stock. The articles of incorporation state that none of the capital stock was paid in cash at the time of organization, and that property conveyed contemporaneously with the organization was valued at two hundred and twenty thousand ($220,000) dollars. The transfer of this property to the company was a part payment of the subscriptions to the capital stock. No further payment was ever made on the said capital stock except not exceeding $5 per share and 50 cents per share paid by some of the shareholders, and the services rendered by Hoskins & Wambold and S. K. Wambold in selling stock.

(2) That thereafter, to wit, on or about the 15th day of April, A. D. 1887, at a meeting of the stockholders of said corporation duly called and convened, all of the said stockholders of said corporation being present, the following preamble and resolution were duly adopted by a vote of the whole of said 40,000 shares of said stock, viz.: "Whereas, this company is in need of money to carry on its mining operations; and whereas, it is deemed inexpedient at this time to call an assessment in money for such purposes; be it resolved that sixteen thousand shares of stock of the corporation be contributed by

the stockholders, ratably, for such purpose, and that the same be issued to W. H. Johnston and C. R. Ely, as trustees for the corporation, and that the said trustees be authorized to sell the same at not less than three dollars per share, as fully paid and nonassessable stock; two-fifths of the same to be paid to the original incorporators, and three-fifths to be paid in to the treasury of the corporation: Provided, that this resolution shall not be construed as mandatory so far as it authorizes the sale of such stock as fully paid up; but that such trustees shall be at liberty to sell a part or the whole or none at all of such stock as fully paid, if they shall deem it to be for the best interest of such corporation." · And that the said stockholders, and all of them, then and there agreed in writing, over their signatures, upon the records of the said corporation, to the said resolutions, and that the same should be carried.

(3) That thereupon each of the said stockholders did contribute and transfer to the said trustees, pursuant to the said resolution and agreement, and for the purposes mentioned therein, 2,000 shares of the said stock, making a total of 16,000 shares so contributed. At this time no certificates of stock appear to have been issued to any person for said sixteen thousand shares, but such certificates were thereafter issued, and directly to the persons purchasing such stock. No other or formal action was ever taken by the eight original subscribers with reference to the said sixteen thousand shares, except that some of them, as will hereafter appear, purchased a portion of said stock from the company, and all acquiesced in the sale of the same. No certificates of stock were ever issued to said Johnston and Ely, as trustees, but they undertook to carry out substantially the resolution in paragraph 2 recited, and substantially as in paragraph 4 stated.

(4) That thereupon the said trustees, Johnston and Ely, entered upon the execution of their said trust, and, with the assent of the said corporation, made an arrangement with a Wisconsin firm, operating under the firm name of Hoskins & Wambold, to sell the said stock or certain portions thereof, as the agents of the said corporation, under the terms of which arrangement the said Hoskins & Wambold were to be paid for their services as such selling agents in shares of the said stock so contributed and turned over to the said trustees. That the said Hoskins & Wambold, as such agents, sold some of the said stock, and, as a firm or individuals, purchased certain others of the said shares, and for their services as such sales agents received 6,000 of the said shares.

(5) That in the month of February, 1888, S. K. Wambold, who was a member of the said firm of Hoskins & Wambold, negotiated with the defendant, at the city of Appleton, Wisconsin, of which city the defendant was then a resident, for the sale of 800 of said shares, at three dollars per share, and that the said sale was then agreed upon and made; and pursuant thereto, on the 20th day of February, A. D. 1888, certificates numbered 29 and 30, for 300 shares and 200 shares, respectively, of said stock, were duly issued by the said corporation to the defendant, described therein as John H. Whorton, of Appleton, which certificates were shortly thereafter delivered to the said defendant by said Wambold, and that, at the time of the said delivery, the said defendant paid to the said Wambold therefor the sum of $1,500. That thereafter, and in pursuance of the said sale, and on the 6th day of July, 1888, the said corporation issued to the said defendant its certain other certificate, numbered 56, for 300 shares of the said stock, in which certificate the said defendant was described as "J. H. Whorton, of Appleton, Wisconsin," which said certificate was shortly thereafter delivered to the said defendant by the said Wambold; and that thereupon, at the request and by the direction of the said Wambold, the said defendant paid for the same to the said Wambold, by remitting the sum of $900 to the said corporation, which said remittance was made to the said corporation by reason of some business arrangements or account existing between the said Wambold and the said corporation. That the said certificates, when issued by the said corporation, and when received by the said defendant, were duly signed by the president and secretary of the said corporation, and sealed with its seal, and had written upon their face, in red ink, the words, "Stock full paid and unassessable." That no distinction was preserved in reference to any of the shares of this

stock which came to the hands of said Hoskins & Wambold, and it does not appear whether the shares so bought by said defendant were in fact direct sales for the corporation, or of stock which said Hoskins & Wambold or said Wambold had purchased, or of stock which they had received as compensation for their services; but it does appear, and the court finds, that the said Wambold, at the time of making said sale, claimed and represented to the said defendant, and said defendant believed, that the said 800 shares of stock which said defendant purchased belonged to, and were being sold by, said Wambold on his own account.

The form of the certificate of stock issued to the defendant was as follows:

"Incorporated under the Laws of the State of Michigan.

"No. 29. Stock Full Paid and Unassessable. Shares 300.
"Capital Stock 40,000 shares.
"$1,000,000. $25 each.

"The American Iron Company.

"This certifies that John H. Whorton, of Appleton, Wisconsin, is the proprietor of three hundred shares, of twenty-five dollars each, in the capital stock of the American Iron Company, incorporated under the general mining laws of the state of Michigan.

"Transferable only on the books of the Co. upon surrender of this certificate.

"In witness whereof, the president and secretary have hereunto subscribed their names, and caused the seal of the company to be affixed, at Ishpeming, Mich., this 20th day of February, A. D., 1888.

"C. R. Ely, Secretary. W. H. Johnston, President.
"[Corporate Seal.]"

These certificates were printed forms, except as to names of persons, parts of dates, and number of shares issued, and the words written in red ink, "Stock full paid and unassessable," at the place above indicated. These certificates were part of the regular stock certificate book of the company, and the stubs thereof, with number of certificate, date of issue, and names of persons to whom issued written thereon, remained in said book.

(6) The property of the American Iron Company consisted of a partially developed iron mine in northern Michigan, which it was operating at the time of the purchase of said 800 shares by defendant, and which did not become a full working or shipping mine until the fall of 1888. At about the time of, and before, the purchase of said stock by defendant, said S. K. Wambold had several interviews with defendant about said stock and the iron mine; but there is no definite statement of the tenor of those interviews except as found in paragraph 7.

(7) That at the time of the said purchase of said stock by said defendant, and at the times when he paid therefor as aforesaid, said defendant had no notice or knowledge of the manner in which the said stock was paid for, or of any of the said arrangements between the said corporation and its said incorporators, or between the said corporation and its said trustees and the said Hoskins & Wambold, except that the said defendant was informed that the mining properties of the said defendant were considered valuable; and that the said Wambold, at the time of making the said sale, represented to the said defendant, and the said defendant believed, that the said stock which he was purchasing, and did purchase, was full paid, and that no liability or risk was incurred beyond the investment of the said sum of $2,400, which he paid for the said shares. That at the said times said defendant was a resident of the state of Wisconsin, and never took any active part in the business of the said corporation, and never participated in or had knowledge of the affairs of the said corporation, otherwise than by the presence for a short time at one of the meetings of the directors of said corporation, which occurred long after the purchase of the said stock by said defendant; and that, until immediately prior to the commencement of this action, said defendant was never informed or notified that any claim or liability was made upon him, and that he never received any dividend or benefit whatever from the said corporation.

(8) That on the 28th day of February, 1893, a bill of complaint was filed on the chancery side of the court in the circuit court for the county of Marquette,

in the state of Michigan, wherein the Atlantic Dynamite Company was complainant, on behalf of itself and such other creditors of the said American Iron Company as might choose to come in and participate in said action, which bill was filed against said the American Iron Company and all of its stockholders. That the said court never acquired jurisdiction of the person of the defendant herein, but did acquire jurisdiction of the person of the said corporation, and of sundry of its stockholders; and that in the said suit such proceedings were had that on the 3d day of February, A. D. 1894, a final decree was entered in said suit, appointing the plaintiff herein receiver of the said the American Iron Company, pursuant to the statutes of the state of Michigan, which said decree conferred upon the said plaintiff herein the usual powers, and imposed upon him the usual duties, of a receiver, and levied an assessment of $15 per share upon every share of the capital stock of said the American Iron Company, except as to one stockholder, who, it was adjudicated, had paid his stock in full; and that the said decree directed that the said receiver do proceed at once to collect the said assessment from each of the said stockholders; and that the said decree determined and declared that the defendant herein, among others, although named in the title to the said chancery suit, was and is without the state of Michigan, and beyond the jurisdiction of the court rendering the said decree. Before February 28, 1893, the American Iron Company was indebted to divers persons in a large amount, and particularly to the complainant to said chancery suit, and named in the final decree therein, and herein referred to, for more than $17,000. By said final decree, an assessment of $15 per share was made and levied, as before stated. The plaintiff, after his appointment as such receiver, and before the commencement of this action, notified defendant, by notice in writing by him subscribed, of the fact of his appointment, of the assessment so made by the chancery court, and made demand for payment of $15 per share of the 800 shares so held by defendant.

(9) That the said certificates of stock so issued to the defendant as aforesaid were in the ordinary form of stock certificates, and that there was nothing in or upon the said certificates to give notice or suggest to the said defendant that the said stock so purchased by him was not full paid; that the said defendant did not purchase said shares, or any of them, from any original stockholder or any original subscriber therefor and at the time of the said negotiation and agreement for purchase of the said shares, and until after the issuance of the said certificates, numbered 29 and 30, and their receipt by him, said defendant was not a member of or in any way connected with the said corporation; and that said defendant purchased and paid for the said 800 shares of stock in good faith, without either notice or knowledge that anything was unpaid upon the said shares, or any of them, believing the same to be full paid.

(10) That it does not appear in this case that the said Johnston and Ely, as trustees of the said 16,000 shares of stock so assigned to them as aforesaid, in trust for the said corporation, ever sold enough of said shares as full paid or nonassessable to equal the amount of $220,000, of par value of such stock; and there is no proof in this case that, after the said $220,000 had been appropriated as payment upon the stock sold as full paid and nonassessable by the said trustees, the said sum of $220,000 would not have fully paid the par value of all such stock so sold.

## Conclusions of Law.

And, as conclusions of law, the court finds:

(1) That the 800 shares of stock of said the American Iron Company purchased as aforesaid by the defendant had, prior to his purchase thereof, been fully paid by the application thereon of the sum of $220,000, so paid in to the said corporation by the incorporators thereof.

(2) That the said defendant was a bona fide purchaser of the said stock, for value, and without notice of any infirmity, and without notice of any actual or claimed deficiency in full payment thereof.

(3) That the said defendant is under no liability either to the said corporation or to its creditors on account of any amount claimed to be unpaid on said stock, or any part thereof; and that, therefore, the complaint of the plaintiff

should be dismissed on the merits; and that judgment should be entered herein in favor of the said defendant, dismissing said complaint, and for said defendant's costs and disbursements of this action.

E. E. Osborn and John Bottensek, for plaintiff in error.

Humphrey Pierce and Charles Quarles, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after the statement of the case, delivered the opinion of the court.

Without doubt, the capital stock of an incorporated company is a fund set apart for the operation of its business, and for the payment of its creditors. Sanger v. Upton, 91 U. S. 56. The original subscriber to the stock is liable for unpaid installments, and he cannot be relieved of this obligation by any act of the corporation. Upton v. Tribilcock, Id. 45. Nor is it doubted that, as a general rule, the transferee of stock is liable for the unpaid assessments. Webster v. Upton, Id. 65. Whether a bona fide purchaser for value, and without notice, of stock issued by a corporation as fully paid up, can be held liable to creditors upon such stock, although the stock was not in fact paid up as represented, is a question which we are relieved from considering, because, upon the facts disclosed by the record, we think the determination of the case must rest upon other considerations. That he cannot be so held liable by the corporation, or, possibly, by creditors, seems to have been declared in Burkinshaw v. Nicolls, 3 App. Cas. 1004; Waterhouse v. Jamieson, L. R. 2 H. L. Sc. 29; Young v. Iron Co., 65 Mich. 125, 31 N. W. 814; Steacy v. Railroad Co., 5 Dill. 348, Fed. Cas. No. 13,329. There is not, however, entire agreement in the cases upon the subject.

The record discloses that, at the organization of the company, the shares of stock were equally divided among the eight incorporators; that no cash payment was at the time made upon the subscription, but the sum of $220,000 was to be credited generally upon the stock, by the transfer to the company of a certain mining lease at that stipulated price. There was no application of this payment to any specific shares, nor, it would seem, were any certificates of stock at the time issued. Within a month after the incorporation of the company, and, so far as the record discloses, before the contracting of any debts, the shareholders, at a meeting at which all were present, unanimously resolved, in order to furnish working capital for the purposes of the corporation, that 16,000 shares of the stock of the corporation be contributed by the shareholders to the corporation for such purpose. These shares were to be issued to certain persons as trustees for the corporation, who were authorized to sell the same as full-paid and unassessable stock, at a price not less than three dollars per share, two-fifths of the proceeds to be paid to the original incorporators, and three-fifths of the proceeds to be covered into the treasury of the corporation for its use. This resolution was signed by each of the stockholders upon the minute book of the corporation. By this arrangement, if the entire 16,000 shares so donated should be sold at the minimum price stated, the company would receive into its treasury the sum of $28,800, and by so much

the assets of the company would be increased as a voluntary contribution by the shareholders. The trustees were not obligated to sell the entire amount of stock so held in trust, but only so much thereof as they should deem for the best interest of the corporation; and it is stated in the findings of the court below that the evidence did not disclose that the trustee sold enough of the stock as full paid to equal $220,000 of par value of such stock. The defendant purchased, of the stock so issued, 800 shares of one Wambold, in the belief that Wambold was the owner of them. The defendant had not actual notice of the transactions here detailed, nor constructive notice of them, unless he was bound by the facts appearing upon the records of the company.

The condition of the corporation at this time may properly be considered. The company was formed to develop the mine it had obtained from the incorporators. It owned the right upon certain conditions to the ore which might be produced. It had no working capital. It had the property, but not the means to make that property available. To obtain that capital, the proceedings detailed were inaugurated. We are constrained to construe the transaction for the sale of the shares as full paid as an appropriation by the shareholders and by the corporation of the unapplied credit of $220,000 to the 16,000 shares of stock contributed to the use of the company, or to such of them as should be issued. This is clearly so, and must in equity be so determined, because the shares to be issued and sold were to be issued and sold as fully paid and unassessable stock. To hold otherwise would be to assume a fraud upon the part of the incorporators and the corporation, which we are not at liberty to do. That such was the contemplation of the parties is also manifested by this: that two-fifths of the proceeds of the stock so to be issued and sold was to be paid to the shareholders, which would be alike fraudulent, unless they designed that the credit of $220,000 to which they were entitled generally upon the stock should be applied upon the stock to be issued. The court below found that it did not appear that, of the 16,000 shares of stock so contributed, there was sold sufficient to equal at their par value the sum of $220,000, and that there was no proof that that sum would not have equaled the full par value of all the stock sold. If we may not assume that no more stock was issued and sold than at its par value would equal the amount of the credit to which the corporators were entitled, and which was appropriated to and in payment of the stock so contributed and sold, it cannot be said, in the absence of proof that more was issued, that one who has in good faith purchased such stock as full paid can be held liable as for unpaid assessments upon the ground that the $220,000 of property received by the company in part payment of the $1,000,000 of stock subscription had not been, and ought not to be, appropriated as payment to that extent upon the stock so donated to the company, and issued as fully paid stock. We are not called upon to determine the legal result which would follow if it appeared that the 16,000 shares donated for sale if, in the judgment of the trustees, necessary for the purposes of the corporation, had in fact been all issued and sold. This conclusion

works no wrong to the creditors of the company, for their recourse to the original subscribers to the stock of the company remains unimpaired. The cases of Clark v. Bever, 139 U. S. 117, 11 Sup. Ct. 468, Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, and Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, while differing in their facts from those here appearing, are, nevertheless, in the discussion of the principles of law governing such transactions, strong to show the correctness of our conclusion. We are careful to observe that this case is ruled upon its peculiar facts, and that we do not mean to be understood as departing in any degree from the principle of law that unpaid subscriptions to the stock of a corporation constitute a trust fund for the benefit of creditors, which may not be given away or disposed of by it without consideration or fraudulently, to the prejudice of creditors; and we withhold any expression of opinion upon the question whether a bona fide purchaser for value, and without notice, of stock issued as paid up, is liable for any part of the par value which may not have been in fact paid.

The judgment will be affirmed.