## FRANK H. EWING v. PAUL SWENSON.[1]

April 16, 1926.

Nos. 25,170, 25,171.

**Burden of proof on receiver to prove amount unpaid by shareholder.**

    1. Where the receiver of an insolvent corporation sues the holder of its shares of stock to recover the unpaid part of the par value, the burden is upon the receiver to prove the amount thereof.

**When holder of shares is not liable.**

    2. If it appears that a prior holder of the shares paid full par value to the corporation, the holder sued is not liable, even though he received it as a bonus for purchasing and paying the full par value for certain shares of an original issue.

    Corporations, 14 C. J. p. 664 n. 20; p. 665 n. 22; p. 952 n. 22; p. 956 n. 50; p. 957 n. 54; p. 958 n. 58 New; p. 960 n. 79; p. 1027 n. 87; p. 1126 n. 86.

---

    See notes in 30 L. R. A. (N. S.) 283; 12 A. L. R. 449; 7 R. C. L. 402; 4 R. C. L. Supp. 482.

Action in the district court for Hennepin county by the receiver of the Security Bond & Investment Company to recover the unpaid portion of the par value of certain stock. The case was tried before

[1]Reported in 208 N. W. 645.

Salmon, J., who ordered judgment in favor of defendant. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*James E. Trask* and *Morphy, Bradford & Cummins*, for appellant. *S. S. Smith* and *James D. Shearer*, for respondents.

HOLT, J.

The action is by the receiver of the Security Bond & Investment Company, a South Dakota corporation doing business in this state, to recover from defendant, the holder of certain shares of stock, the alleged unpaid part of their par value. In other words, the claim is that defendant purchased the stock under the agreement that he should receive two shares of bonus stock for every share for which the full face value was paid. Defendant insists that the stock was represented to be fully paid and nonassessable and that he relied thereon in trading 15 shares of stock of another corporation for 45 shares of the Security Bond & Investment Company. The court found in substance the defendant purchased and received 45 shares of stock in this corporation "in the course of a single and indivisible transaction" whereby said corporation, on October 2, 1919, transferred the same to him in exchange for 15 shares of the stock of the Minnesota Mutual Investment Company which were then of the value of not less than $1,800; that said transaction was conducted by H. G. Stark, the secretary and a director of the corporation, duly authorized to act for it, who represented the 45 shares to have been fully paid and to be nonassessable; that defendant bought in good faith, believing the same to be fully paid, and with no notice or knowledge of how the same had been issued. Judgment was directed in favor of defendant. Plaintiff appeals from the order denying his motion for a new trial.

It is thoroughly settled in this state that one to whom a corporation issues its stock for less than par is liable to subsequent creditors for the difference between what was paid and the par value. The creditors have a right to rely on the representation that for the shares issued the corporation received full payment or a promise to pay in full. If shares are issued without being paid in full or without a promise of full payment, it is deemed a fraud as to subse-

quent creditors, and on that basis the holder may be compelled to pay full value, even though as between him and the corporation the latter has no right to recover. First Nat. Bank of Deadwood v. Gustin M. C. M. Co. 42 Minn. 327, 44 N. W. 198, 6 L. R. A. 676, 18 Am. St. 510; Hospes v. N. W. Mnfg. & Car Co. 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. 637; Hastings M. Co. v. Iron Range Br. Co. 65 Minn. 28, 67 N. W. 652; Wallace v. Carpenter Electric H. Mnfg. Co. 70 Minn. 321, 73 N. W. 189, 68 Am. St. 530.

The origin of the stock was not known to defendant at the time he procured it. Corporation stock has not the qualities of negotiable paper, and the holder thereof may not invoke the protection accorded an innocent good faith purchaser. But obviously, if the stock which defendant holds was in fact fully paid for to the corporation by a prior holder, this action must fail. It is undisputed that 15 shares of defendant's holdings are an original issue to him by the corporation and that 30 shares are a part of the 400 shares issued to one Hegg, assigned by the latter in blank and turned over to the corporation for the purpose of facilitating the sale of other stock. This Hegg stock is spoken of by the officers of the corporation as bonus stock. It appears that this corporation was organized for the purpose of financing the erection of large buildings in order to derive therefrom the expected dividend earnings. The Hegg stock was issued under this arrangement, in substance, as found by the court:

The board of directors agreed to buy from Hegg "the franchises, leases, good will, trade name and all other things of whatsoever description belonging or relating to" his contracting business and pay therefor its reasonable worth of $40,000 by the issue of full-paid common stock to him in that amount, the stock to be delivered upon receiving a bill of sale of the business; that no bill of sale was given, but in lieu thereof Hegg transferred to the corporation one-half of the net anticipated profits of $90,000 from a contract which Hegg had obtained for the erection of a hotel in St. Paul for the Minor Realty Company, the cost not to exceed $900,000, which contract he had obtained with the cooperation of the Security Bond &

Investment Company; that accordingly the 400 shares of stock were issued to Hegg, but, in view of this substituted agreement, 350 shares thereof were assigned by Hegg in blank and turned over to the managing officers of the corporation to be used as bonus stock to induce purchasers to buy original stock.

If these findings are supported by the evidence the case was rightly disposed of, for there is no question but that full payment was made by defendant for the original issue of the 15 shares and, if the 30 shares coming from the Hegg issue were fully paid for by the transactions above referred to, no fraud has been perpetrated upon the creditors by the holder of these 45 shares.

Of course it is elementary that property and services at full and fair value or market price may be used to pay for stock in lieu of cash. It is true money stringency prevented the Minor Realty Company from carrying out its contract. How much this failure was due to the Security Bond & Investment Company's inability to finance the project does not appear. But it does appear that Hegg had done a great deal of work in connection therewith, had procured some of the material required, had let contracts and had employed a superintendent for the construction. Under his arrangement with the corporation he was at its call to figure and plan the construction of any large buildings it should undertake to finance, and to that end he spent considerable time upon planning and estimating the cost of the erection of two other large structures to be financed by the corporation, one at Minneapolis and the other at Fargo, and he estimated the work so done for the corporation, under the final arrangement stated in the findings, as of the value of $30,000. There was no direct evidence disputing it. There was no charge of fraud or collusion in the transactions between Hegg and the corporation, or that the valuation of the business he was to transfer to the corporation for the stock was excessive, or that the substituted arrangement of one-half the net profit on the construction was not in good faith estimated as $45,000. Troup v. Horbach, 53 Neb. 795, 74 N. W. 326, holds that the purchaser of capital stock of a corporation from one who has fully paid for the same in prop-

erty cannot be held liable to creditors solely on the theory of over-valuation.

The burden of proof was upon the receiver to prove to what extent the stock held by defendant had not been paid for, for only to that extent could there be a recovery. Rhode v. Dock-Hop Co. 184 Cal. 367, 194 Pac. 11, 12 A. L. R. 437. If the Hegg stock had been paid for, it is wholly immaterial what defendant paid for it. If it was simply bonus stock, in the sense that there had been no payment to the corporation, defendant would be liable for the full value thereof, even had he bought from Hegg, paying him its full par value. Therefore what defendant paid does not tend to make out a case for plaintiff after the facts in regard to its issue to Hegg appeared as in the findings above referred to. It must be true with corporations as with individuals that in business transactions the anticipated profits of an executory contract may be valued and accepted in payment. Hegg was to have under the contract with the Minor Realty Company 10 per cent of the actual cost of construction, which however was guaranteed by him not to exceed the sum above mentioned.

In California prior to the case above cited it had been frequently determined, in accordance with our decisions above noted, that a holder of stock for which the corporation has not received full par value was responsible to subsequent creditors on the basis of fraud, and it was immaterial whether the stock was originally issued to him or was transferred to him.

In Perkins v. Cowles, 157 Cal. 625, 108 Pac. 711, 30 L. R. A. (N. S.) 283, 137 Am. St. 158, the defendants, transferees of stock, were compelled to make up the balance unpaid upon their shares at the suit of the corporation's trustee in bankruptcy. But there the stock appeared on the books of the corporation as but partially paid. The defense was there rejected that the transferor and the corporation itself had represented that it was fully paid. In the case at bar the records of the corporation do not show the Hegg stock partially paid, prima facie they rather show payment in full and that the same was issued as fully paid and nonassessable. In the Rhode's case, after commenting upon Perkins v. Cowles, it is said:

"We are free, then, to follow the rule that the transferee of watered stock who takes it in ignorance of its real character is not required, even at the suit of a creditor of the company, to pay in anything more upon it, and we have no hesitation in following it, both as the rule almost universally adopted elsewhere, and as the only one consistent with the principle upon which a recovery is permitted in any case against the owner of stock issued by the corporation as fully paid."

In that case recovery was sought of a transferee of purported fully paid stock, while here defendant dealt direct with officers of the corporation. But it was clearly shown that the 30 shares came from the Hegg issue, delivered by Hegg to the officers for a certain purpose, and it was incumbent on plaintiff to show what part, if any, of those shares was not paid. After holding the burden to be the plaintiff's the court, in the Rhode's case, proceeds: "We can see no reason why one who accepts stock with notice or knowledge that it is but partially paid, should not be held to assume the same responsibility which he would assume if the stock were issued for what it really is—partially paid stock. He knows or should know its real character, and should be charged as if its ostensible character were what it really is. This is also, be believe, the practically universal rule of the decisions in other jurisdictions. 3 Clark & M. Priv. Corp. § 564f." The records of the corporation, as stated, purport to show the Hegg issue to have been fully paid and nonassessable.

There are authorities holding that purchasers in good faith who had nothing to do with the issue of the stock are not liable to subsequent creditors. Allen v. Grant, 122 Ga. 552, 50 S. E. 494; Conley v. Hunt, 94 Conn. 551, 109 Atl. 887; Gillett v. Chicago T. & T. Co. 230 Ill. 373, 82 N. E. 891; Young v. Erie I. Ore Co. 65 Mich. 111, 31 N. W. 814; Brant v. Ehlen, 59 Md. 1; Rood v. Wharton, 20 C. C. A. 332, 74 F. 118. However, as to the shares from the Hegg issue, it may be conceded that if plaintiff clearly proved that the corporation had not received payment by the arrangements above to the extent of the par value, defendant is liable for what was lacking.

The court below did not find that it was fully paid, except as might be inferred from the evidentiary findings above set out in substance. Appellant moved to strike out or modify many findings and requested additional ones. But we consider the evidence not such as to require a finding that there is any substantial part of the shares that came out of the Hegg issue unpaid. The original issue was more than paid in full. That the purchase of the 45 shares was one indivisible transaction is of no significance. If the 30 shares were paid for by Hegg, no payment thereon could be required from defendant, the holder, and the corporation realized in cash $1,500 from the stock he gave in exchange, and that paid in full for the 15 shares issued to him direct.

The order is affirmed.

DIBELL and STONE, JJ.
We dissent.

[1]Reported in 208 N. W. 648.