## Provident Trust Company of Philadelphia et al., Trustees, v. Crouse et al.

*Harvey Gourley* and *Russell Gourley*, for plaintiffs.
*Harry M. McCaughey*, for defendants.

OLIVER, P. J., January 13, 1941.—For all practical purposes, there is no dispute about the facts of this case. Plaintiffs, as shareholders, are seeking to prevent the sale of treasury shares to certain officers of the corporation. The sale has been authorized by the shareholders and the board of directors. There was no evidence of bad faith, fraud, or illegality. The shares were purchased by the corporation in February 1939 at par value, plus an allowance for dividends due or shortly to become due thereon. They were offered to the officers at par at their request, although the real value and the liquidating value were substantially higher. The corporation is composed entirely of the members of two families, the members of which have conducted the business since its inception as a partnership in 1876.

There is no doubt that the corporation had the power to purchase its own stock under section 302 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-302. A glance at the balance sheets of the past three years will show clearly that the net assets have always amounted to more than the stated capital, and that the purchase of these shares did not reduce the net assets below the stated capital.

In their bill of complaint, plaintiffs indicated that the theory of their case was based on the preëmptive right of a shareholder to subscribe to unissued stock. Whatever the law may have been before 1933 (see Act of July 12, 1923, P. L. 1083, 15 PS §137), under section 611 of the Business Corporation Law of 1933, supra, "Unless otherwise provided in its articles, a business corporation may issue shares . . . without first offering them to share-

holders of any class or classes." Plaintiffs presented no evidence that the articles granted them preëmptive rights with respect to *any* kind of shares. Furthermore, it has been generally held that preëmptive rights do not extend to treasury shares. See cases cited in note in 85 U. of Pa. L. Rev. 622, 623 (1937), and in Borg v. International Silver Co., 11 F.(2d) 147, 151 (C. C. A. 2d, 1925). It is, therefore, unnecessary for us to determine whether the above provision of our Business Corporation Law applies to treasury shares, because whether it does or does not so apply plaintiffs have no preëmptive rights in this case.

Without preëmptive rights, plaintiffs have no standing to complain of a reduction of their proportionate voting power or of a dilution of their proprietary interest. Furthermore, their complaint is more apparent than real. The original issue of shares established their voting strength and their proportionate interest in the assets, and the reissue of part of the treasury shares acquired in February 1939 will merely restore their shares to the status they held before the treasury shares were so acquired by the corporation, prior to which time plaintiffs did not hold the relative interest in the corporation to which they now claim they are entitled.

Plaintiffs contend further that, since no corporate purpose will be served by the sale, its consummation will amount to a breach of faith on the part of the officers and directors, resulting in the enrichment of certain shareholders and officers at the expense of others.

We agree with plaintiffs that the transaction in question could not be justified as a bonus or increased remuneration for services rendered to the corporation. It is the settled law of this State that an officer of a corporation is not entitled to any compensation for past services beyond that agreed upon before the services were rendered: Martindale v. Wilson-Cass Co., 134 Pa. 348 (1890) ; Wilson v. Brown, 269 Pa. 225 (1920) ; Carville v. A. F. Bornot & Co., 288 Pa. 104, 108 (1927) ; Culp v. Independent Card Corp., 99 Pa. Superior Ct. 275 (1930).

However, we do not think this principle is applicable to the present case.

The proposed sale of stock cannot be construed as a concealed gift. There is no question of bad faith or fraud involved. The transaction was negotiated in the open and properly authorized by the shareholders at a regular meeting, where it was stated in the minutes, and subsequently at a meeting of the directors, that the motive of the corporation and its shareholders in arranging the sale was to comply with the request of the president that he and other "producing employes" be permitted to purchase shares at par, as some recognition of past services and as a protection in their old age. As stated above, a gift of corporate property or a bonus for such purpose would be improper. However, we are concerned here with what appears to be a bona fide sale of treasury shares, and not a gift, albeit the purchasers seem to be receiving a good bargain.

Treasury shares are shares which have been originally issued by the corporation and subsequently reacquired: Commonwealth v. Ajax Metal Co., 8 D. & C. 30 (1925) ; 18 C. J. S. 645. Although the legal incidents of treasury shares for many purposes are far from settled (note 85 U. of Pa. L. Rev. 622 (1937)), it is generally recognized that, if they have been fully paid before reacquisition by the corporation, they may be sold for any price obtainable, even though it is less than par value: Pullman v. Railway Equipment Co., for use, 73 Ill. App. 313 (1898) ; Ewing v. Swenson, 167 Minn. 113 (1926) ; Robinson v. Bradley, 141 S. W.(2d) 425 (Tex. Civ. App. 1940). See also Borg v. International Silver Co., 11 F.(2d) 147 (C. C. A. 2d, 1925), Faris v. Beck, 74 Colo. 480 (1924), and Bondurant v. Raven Coal Co., 25 S. W. (2d) 566 (Mo. App. 1929).

In Pennsylvania, the governing rule has been enacted by the legislature. Section 603 of the Business Corporation Law of 1933, supra, provides that "Shares of a corporation issued and thereafter acquired by it may be dis-

posed of by the corporation for such consideration as may be fixed from time to time by the board of directors." It is apparent that the legislature intended to set up a flexible rule to meet varying situations. Market value, par value, book value, etc., none of these is necessarily a limitation upon the action of the directors. The value of treasury shares under this rule is within the discretion of the directors, acting presumably in each situation for the best interests of the corporation.

Just as with regard to other questions of management, so here, the courts will not interfere with the judgment of the directors without a showing of fraud, concealment, illegality, bad faith, or gross negligence: Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544, 555 (1931). The reluctance of judicial tribunals to interfere with the management of corporate affairs becomes greater when the action of the directors is expressly authorized by an overwhelming majority of the shareholders. See 18 C. J. S. 1172. In the present situation, no fraud or bad faith is involved. The transaction was not concealed and was not a subterfuge to gain control of the corporation or to acquire its property at a personal profit.

What we have before us is a matter of policy dependent upon the judgment of the directors. We cannot say that they have erred or made a bad bargain. The corporation is clearly solvent and enjoying substantial financial profits. The proposed sale is for a valuable consideration, which was of sufficient amount to establish that it was bona fide. Its purpose, to increase the small stock holdings of the officers principally responsible for the success of the business, does not render the contract improper so long as the consideration is not grossly inadequate or a means of making a gift of corporate property. That a gift was not intended here seems clear. The shares were offered at par value, $100 per share. This was no doubt less than liquidating value, but the question of consideration is generally within the discretion of the directors, and we cannot say that they have abused that discretion.

If the corporation is receiving for treasury shares an amount equal to that for which they were repurchased by the corporation, the good faith of the sale should be considered prima facie established. See note, 85 U. of Pa. L. Rev. 622, 624 (1937). It is true that here the corporation paid out more for the acquisition of the shares than it will receive in the present sale. But the additional amount paid out was intended as an allowance for dividends then accrued and payable or shortly to become due. Thus, we have concluded that the proposed sale is not one in name only and is not intended to conceal a gift of corporate assets. In this connection it is significant that two of the four officers to whom these shares have been offered have not accepted them because they have been unable or unwilling to pay the purchase price.

Therefore, we have concluded that plaintiffs are not entitled to equitable relief. . . .