[No. 7,113.—In Bank.]

CHARLES W. EWING v. OROVILLE MINING COMPANY.

| 56 | 649 |
|----|-----|
| 134 | 296 |

Corporation — Capital Stock — Constitutional Law.— Section 359 of the Civil Code conflicts with § 11, article xii, of the Constitution (of 1879), and is annulled.

Id.—Id.—Id.—The first clause of § 11, article xii, of the Constitution, providing that no corporation shall issue stock, except for certain purposes, is prohibitory. The last clause of said section, providing for the increase of the capital stock of corporations, is not self-executing.

Case Distinguished.—McDonald v. Patterson, 54 Cal. 245.

Construction of Constitution.—Section 22, article xi, of the Constitution, as a rule of construction, applies to all the sections of that instrument alike.

Appeal from an order granting an injunction, in the Superior Court of the City and County of San Francisco. Sullivan, J.

*Stewart, Van Clief & Herrin*, for Appellants.

To hold that the provisions of the Constitution in question can be enforced without appropriate legislation, by expunging from the present law its words which are inconsistent with the Constitution, and substituting other words required by the Constitution, is in effect constructing a new law, amending the present statute so that it will conform to the provisions of the Constitution.

*Garber, Thornton & Bishop,* for Respondent.

The Code furnishes a complete scheme for a meeting for the purpose, consistent with the Constitution, except in two particulars. It provides for *four* weeks' notice, instead of *sixty days'*, and for a representation of *two-thirds* of the stock, instead of "the larger amount in value" thereof. The Constitution is self-executing, and the Code provision is to be read as if amended in conformity with the Constitution. (*Hyatt* v. *Allen,* 54 Cal. 353; *McDonald* v. *Patterson,* id. 245)

THORNTON, J.:

This is an appeal from an order granting an injunction upon a complaint setting forth the following facts:

That the defendant company is a corporation created for mining purposes, under the laws of this State, on the 11th day of October, 1878, with a capital stock of one million dollars, divided into one hundred thousand shares of the par value of one hundred dollars, all of which stock was, on or before the 11th day of June, 1878, subscribed for and held by stockholders, and is of the value of six dollars per share; that the corporation was the owner of a mining property in Bodie District of the value of seven hundred and fifty thousand dollars; that the plaintiff has been, since the 23d of March, 1880, the owner and holder of four hundred eighty-nine and one-fourth shares of the said stock; that the other defendants, except Stuart, were, at the times mentioned in the complaint, the duly qualified and acting directors of said corporation, and defendant Stuart secretary of the same.

The plaintiff further states, that a proceeding was had to increase the capital stock of the defendant corporation to thirteen million four hundred thousand dollars, divided into one hundred

thirty-four thousand shares, under the provisions of the Civil
Code.   (Civ. Code, § 359.)   It is alleged, that those provisions
have been complied with in all respects, and that the directors
were authorized to take all steps necessary to effect such in-
crease, and were also authorized to dispose of the thirty-four
thousand shares increase, or so much thereof as might be nec-
essary to purchase for said corporation certain, valuable mining
property adjoining the mine now owned by it in Bódie Mining
District; that the corporation, through the directors and. secre-
tary, gives out and threatens to issues certificates for the in-
creased capital stock, and to dispose of the same, or so much as
may be necessary for the purpose above set forth; that the
plaintiff demanded of the defendants, and each of them, that
they refrain from issuing such certificates, or any of them, un-
til such proceedings have been taken to increase the capital
stock of the corporation as are required by § 11 of article xii
of the Constitution; that, unless enjoined, they will issue such
certificates for such increase, and distribute them to such per-
sons owning said mining property, in consideration of their
conveyance to the corporation defendant, all of which are ille-
gal and invalid, and beyond the powers of the defendants, and
if such certificates are issued and delivered to the persons
aforesaid, such action will depreciate the value of plaintiff's
stock, and will involve the corporation defendant in expensive
controversies and litigation with the holders and claimants of
such increased capital stock, to the great and irreparable injury
of said defendant corporation and the plaintiff.

On a hearing on notice and motion, an injunction was
granted on the complaint, which was verified, as prayed for
therein, requiring the defendants to refrain from issuing or de-
livering certificates for said increased capital stock, or any por-
tion thereof.   From this order defendants appealed.

It is contended, that the injunction should be retained, and
that there was no error in granting it, because the proceed-
ings taken to increase the capital stock were under provisions
of the Civil Code, which had no existence after the Constitu-
tion went into effect.   The provisions of the Code referred to
are found in § 359.   In this case, instead of the meeting re-
quired by it, the written assent of the holders of three-fourths

of the *subscribed* capital stock of the corporation was procured, under subdivision 6 of the section referred to, which was declared by such subdivision to be as effectual to authorize an increase of the capital stock, as if the meeting required by the section had been called and held.

Is this section of the Code annulled by the Constitution? To determine this, we must examine the provisions of the Constitution which relate to it.    Section 11 of article xii of the Constitution is in these words :

"No corporation shall issue stock or bonds, except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void.   The stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock, at a meeting called for that purpose, giving sixty days' public notice, as may be provided by law."

This section declares, as the settled policy of the State, which can in no manner be changed by any department of the government, that no corporatian shall issue stock except for money paid, labor done, or property actually received, and all fictitious increase of stock shall be void.

It further declares, that the stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock, at a meeting called for that purpose, giving sixty days' public notice, as may be provided by law.   The latter clause must be controlled and limited by the provisions of the first clause, and certainly, as that which cannot be done directly cannot be accomplished by indirection.   ( *Cummings* v.  *State of Missouri*, 4 Wall. 326–329.) A corporation could not be allowed by any power known to the Constitution and laws of the State to effect, under the guise of a purchase of property, a fictitious increase of stock.   It seems to us that a corporation could not increase its stock to an unreasonable amount beyond the value of the property actually received.   This would appear to be indicated by joining the words "property actually received" with the words "money paid" and "labor done."   This rule might be difficult of appli-

cation, but such seems to be the rule laid down. The restrictions of the first clause are so manifestly prohibitory to the extent indicated by the above remarks, that the Legislature would at all times be bound by them. What the discretion in this respect must be to be exercised by the Legislature, it is unnecessary to say in advance of a case presenting it.

As to the latter clause, it is manifest that it is not self-executing. It does not of itself furnish a complete mode of accomplishing the object which the Constitution allows to be carried out in terms by a general law, to be enacted by the Legislature. This law, however, must provide for a meeting, and the meeting must be called for the purpose, in such a case as this, for the purpose of increasing the stock, and sixty days' public notice must be given, as may be provided by law; i. e., in the mode to be prescribed by law.

It is sufficient in this case to determine that this clause is not self-executing—that is, legislation is required to enforce it. To attempt to define the limits of the legislative power in the case before us, it is manifest, is uncalled for.

Section 1 of article xxii of the Constitution is in these words:
" That all laws in force at the adoption of this Constitution, not inconsistent therewith, shall remain in full force and effect until altered or repealed by the Legislature; and all rights, actions, prosecutions, claims, and contracts of the State, counties, individuals, or bodies corporate, not inconsistent therewith, shall continue to be as valid as if this Constitution had not been adopted. The provisions of all laws which are inconsistent with this Constitution shall cease upon the adoption thereof; except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them, shall remain in full force until the first day of July, eighteen hundred and eighty, unless sooner altered or repealed by the Legislature."

As we have stated above, § 359 of the Civil Code provided for an increase of stock through the medium of a meeting, or by the written assent of the holders of three-fourths of the capital stock of the corporation. Very exact and stringent provisions are made in the section referred to as to notice, and other directions are given to be observed to accomplish the increase. This section furnishes a complete scheme to execute

such purpose. The last subdivision (6) of this section, as stated above, makes the written assent of the holders of three-fourths of the *subscribed* capital stock of the corporation as effectual to accomplish the increase as if a meeting had been called and held.

These provisions are not such as are required under the section of the Constitution above quoted (§ 11, art. xii). The course pursued in this case, of procuring the written assent of the holders of three-fourths of the subscribed capital stock, is not contemplated in the Constitution at all. The provisions in the Code under which such course was taken are manifestly inconsistent with the provisions of the Constitution. The section provides for a notice of the time and place of meeting, etc., to be served personally on each stockholder resident in the State, at his place of residence if known, and if not known, at the place where the principal office of the corporation is situated, and be published in a newspaper published in the county of such principal place of business once a week for four weeks successively. At what period of time prior to the meeting the personal service of the notice is to be made on the stockholder is not prescribed. In these respects, if not in others, the section referred to is inconsistent with the provisions of the Constitution in § 11, art. xii.

As we have seen, this provision of the Constitution is not self-executing. It requires legislation to enforce it. It therefore was not in force when the proceedings to effect an increase of the stock of the corporation was taken in the case before us.

In this respect, it is unlike the provision in the Constitution (§ 19, art. xi), considered and passed on in *McDonald* v. *Patterson*, the opinion in which was filed on the 2nd day of March, 1880. That provision was strongly prohibitory, was self-executing, and required no legislation to enforce it. It was binding on every one—every department of the government and every source of authority to legislate—and took effect as soon as the Constitution went into operation in January of this year.

The conclusion reached is not effected by § 22 of article i of the Constitution. That section declares, that " the provisions of this Constitution are declared to be mandatory and prohibitory, unless by express words they are declared to be other-

wise." This section, as a rule of construction, applies to all sections alike. It applies to § 1 of article xxii as much as to § 11 of article xii, or any other. The provision of the former section, that " all laws which are inconsistent with such provisions of the Constitution as require legislation to enforce them, shall remain in full force until the 1st day of July, 1880, unless sooner altered or repealed by the Legislature," is a mandate that we cannot disregard. The prohibitory language used in § 11, article xii, so far as affects this case, is a provision operating upon the Legislature when they come to enact the general law referred to in it, as a restriction upon its power to the extent expressed in the section. It is not a positive prohibition, annulling a law even if consistent with the restrictions to be inserted in the general law when enacted, but a prohibition operating on the Legislature when they enact the general law. In fine, it is a prohibition to be made effective by legislation, with the qualification, that if the Legislature enacts no such general law, or does not repeal or alter the existing law before the 1st day of July, 1880, such law, though inconsistent with the provisions of the Constitution which require legislation to enforce it, ceases to be of any validity or effect on the day just named.

The provisions referred to in § 1, article xxii, must contain the express words mentioned in § 22, article i, otherwise they are of no effect in every case where language apparently prohibitory is used in a section requiring legislation to enforce it. Such a construction as that indicated by the last clause of the preceding sentence would in effect nullify the mandate of § 1, article xxii. To follow such a construction would be to disregard the mandate, under the guise of obeying it. The latter clause of § 11, article xii, is only a restriction on legislative power thereafter to be exercised, and is not a negation of all power to the Legislature. It plainly recognizes the power of the Legislature to act, by general law, to accomplish an increase of capital stock, restrained by other provisions of that section.

It follows, as a deduction from the above, that the order of the Court below must be reversed, and the cause remanded. So ordered.

McKinstry, J., Ross, J., Sharpstein, J., and McKee, J., concurred.