[Civ. No. 53.   Second Appellate District.—October 31, 1905.]

STEPHEN L. TURNER, Plaintiff-Respondent, and W. S. JAMES, Intervener-Respondent, v. FIDELITY LOAN CONCERN et al., Defendants; H. B. LORD, and O. P. WIDAMAN, Appellants.

CORPORATIONS—CREDITOR'S SUIT UPON STOCK SUBSCRIPTIONS—DEFENSES —PAID-UP STOCK — INDEBTEDNESS TO STOCKHOLDER — EVIDENCE — FINDING.—In an equitable suit by judgment creditors of a corporation to recover alleged unpaid subscriptions to its stock, in which defendants pleaded that the stock was paid up, and in which one of

them pleaded an agreement between the stockholders that the stock was to be issued for services to be rendered by him, and that services were rendered in excess of the face value of the stock, and such defendant testified without objection that the corporation was indebted to him for services worth twice the face value of the stock, which was confirmed by the books of the corporation introduced by plaintiff, it was the duty of the court to do equity to such defendant, and to find the value of the services as bearing upon the plea of *quantum meruit*, as well as upon the other issues, and to have given that fact due effect.

ID.—ISSUANCE OF STOCK—RESOLUTION OF BOARD OF DIRECTORS—NOTICE OF MEETING—RECITAL IN RECORD.—Where resolutions of the board of directors in regard to the issuance of the stock of the corporation were passed at a meeting, the record of which recites that the directors were notified thereof, the recital is sufficient proof of notice to them, where the contrary does not appear.

ID.—EVIDENCE—AGREEMENT BETWEEN INCORPORATORS—CONSTRUCTION OF RESOLUTIONS—PAID-UP STOCK—ILLEGALITY OF CERTIFICATES NOT PRESUMED.—An agreement between the incorporators in regard to the issuance of stock was admissible in evidence, as having an important bearing upon the question as to the construction and validity of the resolutions of the board of directors, and as indicating that the stock was issued as paid-up stock, and that otherwise the issue of the certificates would have been illegal, which is not to be presumed.

ID.—ADOPTION OF INCORPORATORS' AGREEMENT—VALIDITY OF ACTION OF DIRECTORS—SOLE BENEFICIARIES.—By the adoption of the incorporators' agreement by the corporation, that agreement became the agreement of the corporation; and no objection can be urged to the resolution adopting it on the score of the interest of the directors, who, though trustees, were the sole beneficiaries, and in this double capacity were fully empowered to act.

ID.—LIMIT OF JUDGMENT CREDITOR TO RIGHTS OF CORPORATION—WANT OF PRIVITY WITH STOCKHOLDERS—ABSENCE OF FRAUD OR ESTOPPEL. Where no direct liability of stockholders is involved, the rights of a judgment creditor seeking to enforce the subscription of stockholders to the corporation as its debtors, between whom there is no privity, cannot in general be greater than those of the corporation against the stockholders if there is no fraud, actual or constructive, and there are no facts showing an estoppel of the stockholders as against the judgment creditor.

ID.—EMPLOYMENT BY PRINCIPAL STOCKHOLDERS OF OTHERS—PAID-UP STOCK FOR SERVICES.—Where, from the circumstances of the case, it may be inferred that the principal stockholders were the employers of others, and caused paid-up stock to be issued to them as employees for their services, and there was no fraud in the terms of their employment, there is nothing to take the case out of the gen-

eral rule that the creditors of the corporation have no greater rights than the corporation.

ID.—PRESUMPTION OF FAIRNESS—PROTECTION OF ASSIGNEE.—Where the contrary does not appear, and until the contrary is shown, the presumption is that the transaction of the issuance of stock for services was fair, and this general presumption is confirmed by the consideration that the issue of the certificate would otherwise have contravened constitutional and statutory provisions; and in the absence of circumstances tending to inform him better, the assignee of stock so issued may rely upon such presumption.

ID.—POWER OF CORPORATION—ISSUANCE OF STOCK FOR PROPERTY OR SERVICES.—A corporation has legitimate power to dispose of and issue stock for full value received in land or property or in services.

ID.—ACTION UPON SUBSCRIPTION—EXECUTED CONTRACT—IMPLIED CONTRACT—MATERIAL VARIANCE.—Where the action as pleaded and found is upon a subscription to stock, and the proof shows an executed contract of subscription, and any recovery, if it could be otherwise had, can only rest upon an implied contract to pay the full par value of the stock, the variance is material.

ID.—FURTHER PROCEEDINGS—QUESTION AS TO REMEDY—ASSESSMENT UPON STOCK—PARTIES—"LAW OF CASE."—Where the majority of the justices of the district court of appeal are of the opinion that as to further proceedings the remedy of the judgment creditors to reach subscriptions to stock can only be had by an assessment upon the stock by the corporation or by the court, and that all stockholders should be made parties, and one of the justices is of the contrary opinion, the majority opinion is not the "law of the case" for further proceedings.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

S. J. Parsons, for Appellant.

Walter Bordwell, for Plaintiff-Respondent.

Camp & Lissner, for Intervener-Respondent.

SMITH, J.—Appeal from a judgment against the defendants, Lord and Widaman, and from an order denying their motion for a new trial. The plaintiff and intervener are creditors of the defendant corporation, on judgments of date June 4, 1901, or later, and the suit was brought to sub-

ject to the payment of plaintiff's claim the alleged subscription liability of the appellant defendants. The causes of action on which the judgments were rendered arose in the year 1901; but with regard to plaintiff's cause of action, it appears from evidence introduced by him that part thereof was in renewal of a note of the corporation to him, of date October 4, 1900, for the sum of $500, given in lieu of a personal note of O'Bryan, who was president of the corporation. The certificate of incorporation was filed August 18, 1900. The capital stock of the corporation consists of five hundred shares of the par value of $100 each; of which the defendant Widaman and Bingham, the assignor of the defendant Lord, are named as having subscribed for ten shares each. One Rowan, who is named as a subscriber for one share, was originally a defendant in the case; but the suit as to him has been dismissed. The other subscribers named are Raymond and O'Bryan—the former for two hundred and forty shares, the latter for two hundred and thirty-nine shares. These subscriptions together make up the full amount of the capital stock, and the subscribers are named in the certificate as directors of the corporation. The certificates of stock to Bingham and Widaman are dated in August, 1900, and were issued to them in the month of November of that year, under two resolutions of the board of directors, of date August 25, and September 4, 1900; which are as follows: "On motion, duly seconded, it was resolved that the secretary and president be and they are hereby authorized to issue to the stockholders of this corporation the certain shares of stock subscribed by the respective incorporators, namely, to R. C. O'Bryan a certificate calling for two hundred and thirty-nine shares, to H. A. Bingham a certificate calling for ten shares, to Robert A. Rowan a certificate calling for one share, to W. B. Raymund a certificate calling for two hundred and forty shares, and to O. P. Widaman a certificate calling for ten shares. And upon the motion of O. P. Widaman it was resolved that in consideration of the assignment, sale and delivery to this corporation of all the fixtures, safe, property and effects now used in the office of this company, that there shall be issued to W. B. Raymund two hundred and forty shares of the capital stock of this corporation, and to R. C. O'Bryan

two hundred and thirty-nine shares, and in consideration
of the payment to this company by O. P. Widaman, Robert
A. Rowan and H. A. Bingham of the sum of $1.00 (one
dollar) each, and the further consideration of their good-
will, interest and services in and about the management,
formation and directorship of said corporation, that there
shall be issued to the said O. P. Widaman ten shares of
the capital stock of this corporation, to Robert A. Rowan
one share of the capital stock of this corporation, and to H.
A. Bingham ten shares of the capital stock of this corpo-
ration, and the president and secretary, respectively, are
hereby authorized and directed to issue such capital stock
as aforesaid under the name and seal of this corporation.''

The complaint alleges: That Widaman and Rowan ''were
subscribers to the capital stock of said defendant corpora-
tion at the time of its organization''; that they have not
''paid the full amount of their subscription . . , or any por-
tion thereof''; and ''that each of said defendants is indebted
to said defendant corporation on account of his subscrip-
tion,'' Widaman in the sum of $1,000, Rowan in the sum of
$100; that since the organization of the corporation the de-
fendant Lord ''has become and is now the owner of ten
shares of stock'' therein; that ''there is due, owing and
unpaid on account of said ten shares of stock to the said
corporation the sum of $1,000, no part of which has ever
been paid by the defendant Lord, or by his predecessors in
interest of the said ten shares of stock.'' The prayer of
the complaint is, in effect, that the court ascertain the
amount of indebtedness from each of the defendants Lord,
Widaman, and Rowan to the corporation on account of their
subscription, and that plaintiff have judgment against each
of them for the amount due to the plaintiff on his judg-
ment against the defendant corporation, not to exceed the
amount due from each of said defendants to the defendant
corporation. The allegations and prayer of the complaint in
intervention are substantially similar, except that it is al-
leged in the latter that the defendants are the only stock-
holders liable for unpaid subscriptions; but this allegation
is negatived by the findings. There was a demurrer to the
complaint, which was overruled.

The answers of the defendants deny the alleged indebtedness, and plead specially, in effect, that the stock was issued as paid-up stock, to the defendant Widaman and to Bingham, the predecessor of the defendant Lord, in consideration of services rendered and to be rendered. But on the answers of the two defendants—as on the allegations of the complaint, and on the evidence and facts found—their cases differ in detail. As to the defendant Widaman, the cause of action is on his alleged subscription to the capital stock, as evidenced by the certificate of incorporation; and in his answer, besides denying "that he ever subscribed and agreed to pay any sum whatever for ten shares . . . of the capital stock of the" corporation, he alleges in effect: That there was an agreement between the incorporators of the company that there should be issued to him for certain legal services to be rendered by him the ten shares of stock for which in the certificate he is named as subscriber; that this agreement was confirmed and adopted by the company; that the services were rendered and the stock issued to him accordingly; and that the services rendered were in excess of the nominal or par value of the stock. As to the defendant Lord, the cause of action is based on his acceptance of the stock as assignee of Bingham; and in his answer, besides denials, it is alleged that the stock was fully paid for by Bingham, and was issued to him as paid-up stock—which is in effect equivalent to the defense more specifically pleaded by Widaman; and it is further alleged that he was induced to take the stock by representations made to him by the corporation, through its proper officers, that it had been fully paid for, as to which allegation it may be observed that it appears from his testimony that he was invited by O'Bryan, the president of the corporation, "to take the Bingham stock and act as director," and that, accepting the proposition, he took the stock supposing it to be paid for.

On the issues made by Widaman, the findings are, in effect, that he has paid no part of the sum for which he subscribed to the capital stock of the company, and there is due on account of his said subscription the sum of $1,000; that a certificate of ten shares of stock was issued to him·"on account of said subscription." As to other matters pleaded by this defendant it is found: "(10) . . . *That the de-*

*fendant Widaman did do work as an attorney at law for the defendant corporation for which the president and secretary of said corporation issued to said defendant Widaman his certificate for said shares of its capital stock; that said defendant Widaman did perform work and labor or render services to said corporation in excess of the value of said ten shares of stock;* that no contract between the defendant Widaman and the promoters of said defendant corporation, whereby said promoters were to pay the said defendant Widaman for services rendered, or to be rendered, by him in the organization of said corporation, was ever recognized by resolution of the board of directors of said corporation, or otherwise; that no such resolution was ever passed after the organization of said corporation; that said ten shares of stock issued by said defendant corporation to the defendant Widaman were never by any authority of said corporation so issued to him as fully paid stock in consideration of the services rendered by said defendant Widaman to the promoters of said corporation; that the said defendant Widaman had not fully paid for said ten shares of stock issued to him by said corporation at the time of the delivery thereof or at any other time; that there was due from the defendant Widaman at the time of the issuance of said stock to him the sum of $1,000 to said defendant corporation." There is no finding as to the allegation of the answer of this defendant that the value of the services rendered by him was in excess of the par value of the stock, though there was evidence that the services were worth more than twice the par value. As to the defendant Lord, it is found that the stock held by him was not paid for, in whole or in part. Upon these findings judgment was entered in favor of the plaintiff and the intervener against each of the defendants for the sum of $1,000, the par value of the stock.

The following are the points urged by the appellant for reversal: 1. The court erred in refusing to allow the defendants to show the contract between the corporators as to how the stock was to be issued, and for what consideration. 2. It was also error to exclude the question to Raymund: "What was the market value of that stock at the time it was transferred to Mr. Widaman." 3. The evidence was insufficient to support the findings in various particulars. But the only

specifications that need be considered are those referring to the alleged indebtedness of the defendants, and the nonpayment thereof, and to the parts of finding 10 unitalicized. 4. (a) The resolution of September 4, 1900, was valid and effectual to authorize the issuance of the stock to the stockholders for the consideration agreed upon; (b) it was duly passed; (c) nor can it be attacked on account of the interest of the directors, except by the corporation or a stockholder. (d) The evidence offered and excluded was admissible to explain it. 5. In the case of the defendant Widaman there is a material variance between the case alleged and found and the proofs.

The points principally discussed by the respondent's counsel relate to the due passage, the construction, and the validity of the resolution of September 4, 1900. It is claimed also, that these are the only questions involved; but this proposition is, we think, clearly untenable for several reasons: 1. Widaman testifies that the corporation was indebted to him at the time of the trial for money loaned; and this seems to be confirmed by the ledger of the company, put in evidence by the plaintiff, which, as we understand it, shows two credits of $250 each, of dates February 21, and 28, 1901; as to one of which, at least, we can find no debit. Besides, it is found by the court that the value of the services rendered by Widaman was in excess of the value of the stock received by him; and from the only evidence in the case on the point, it appears that his services "were worth twice the face value of the stock." It is, indeed, claimed by the respondents that no "offset" or "*quantum meruit*" is pleaded by this defendant. But as to the first item, the evidence of Widaman was admitted without objection, and the amount of the indebtedness was brought to the attention of the court by the plaintiff himself; and we are not prepared to say that in an equitable proceeding of this character, it was not the duty of the court to render equity in this particular to the defendant. (Code Civ. Proc., sec. 440.) But, however this may be, the facts showing the indebtedness of the corporation to Widaman for his services are pleaded; and we are of the opinion of the appellants' counsel that (if the theory of the court be assumed) the actual plea "includes all the elements of a plea of the *quantum meruit* and more."

2 Cal. App.—9

We are of the opinion, therefore, that, on this account, as well as on account of the bearing of the fact on the other issues, the court should have found the value of the services of Widaman, and given the fact due effect. But we are of opinion, also, that the objections of the respondent to the due enactment of the resolution of September 4, 1900, as well as of the previous resolution of August 25th, are untenable. On this point it is unnecessary to dwell on the fact that the resolution was ratified by Rowan and Bingham (who, with the others, were the only stockholders) by their acceptance of the stock; nor need we enter at length upon the question as to proof of notice of the meeting of the former date. The record of the meeting recites that the directors were notified, and it is sufficient that the contrary does not appear. (*Granger* v. *Original Empire M. & M. Co.,* 59 Cal. 679; *Stockton C. H. & A. Works* v. *Houser,* 109 Cal. 9-11, [41 Pac. 809].) It is also to be observed that, were the point well taken, the result would seem to follow that the certificates were issued without authority and were void; and consequently the grounds for plaintiff's action, at least as against Lord, would seem to be lacking. We have to consider, therefore, only the questions of the construction and of the validity of the resolutions of the board; and on both these questions we think the evidence as to the agreement of the incorporators should have been admitted. For not only would the excluded evidence have an important bearing upon the question of construction, but it is clear from the evidence (whatever construction we may put upon the resolutions) that the agreement between the corporators (whatever it may have been) was adopted by the corporation; and, indeed, otherwise the plaintiff's suit against Widaman would be without foundation to rest on.

As to the construction of the resolution, reading it in connection with the previous resolution of August 25th, and the evidence introduced and offered, we think there can be no doubt it must be construed as claimed by the appellants, and that the stock was issued as paid-up stock; and, it may be added, this construction is confirmed by the consideration that otherwise the issue of the certificates would have been illegal (Const., art. XII, sec. 11; Civ. Code, secs. 323, 359; *Kellerman* v. *Maier,* 116 Cal. 424, [48 Pac. 377]; *Ewing*

v. *Oroville Min. Co.,* 56 Cal. 652), which is not to be presumed.

As to the validity of the transaction, the question is to be considered from two points of view, namely, with regard to the corporation, and with regard to subsequent creditors. As to the corporation no serious question can arise. By the adoption of the incorporators' agreement, that agreement became the agreement of the corporation. (*San Joaquin L. & W. Co.* v. *Beecher,* 101 Cal. 70, [35 Pac. 349]; *Scadden Flat Co.* v. *Scadden,* 121 Cal. 33, [53 Pac. 440], and cases cited *infra.*) Nor can any objection be urged to the resolution on the score of the interest of the directors. For here the directors, though trustees, were the sole beneficiaries, and in this double capacity were fully empowered to act. (*Chater* v. *San Francisco Refining Co.,* 19 Cal. 246; *Shorb* v. *Beaudry,* 56 Cal. 450; *Cornell* v. *Corbin,* 64 Cal. 200, [30 Pac. 629].; *Kohl* v. *Lilienthal,* 81 Cal. 397, [20 Pac. 401, 22 Pac. 689]; *Behlow* v. *Fischer,* 102 Cal. 214, 215, [36 Pac. 509]; *Kellerman* v. *Maier,* 116 Cal. 416, [48 Pac. 377]; *Hunt* v. *Davis,* 135 Cal. 34, [66 Pac. 957]; Civ. Code, secs. 323, 324.) As to the creditors of the corporation, the principles by which their rights are to be determined are sufficiently simple, though, it must be confessed, they are somewhat obscured by the immense multiplicity and varying character of the authorities. The relation of the judgment debtor to the creditors of a corporation is simply a particular case of the general case of a creditor seeking to collect his debt from the debtor of his debtor by attachment or other proceeding authorized by law. In no case is there any privity between the creditor and the debtor's debtor (*Matteson etc. Mfg. Co.* v. *Conley,* 144 Cal. 483, [77 Pac. 1042]), but whatever rights the former may have come to him through the intermediate debtor, and the general principle is that they cannot be other or greater than his. In this the case differs from that of the statutory liability of the stockholder, where the direct relation of debtor and creditor is established between the stockholder and the creditor by the statute. (Civ. Code, sec. 322.) There are exceptions, or apparent exceptions, to the general rule in cases of fraud, actual or constructive, as to creditors, and there are cases where the stockholder may be estopped from showing the

real nature of the contract or agreement between him and
the corporation; and, it may be admitted, the latter prin-
ciple and that of constructive fraud have been .extended in
their application with extreme liberality in favor of creditors,
and, perhaps, with some disregard of the rights of inno-
cent individuals. Hence, it may be said of ''unpaid sub-
scriptions to stock'' that ''these may sometimes be collected
by creditors when the corporation itself has released them,
or in some way deprived itself of that right.'' (*Vermont
Co.* v. *Declez Co.,* 135 Cal. 583, [87 Am. St. Rep. 143, 67 Pac.
1057].) But we see nothing in the agreement between the
corporation and the defendants here to take the case from
the application of the general rule, or to give to the cred-
itors of the corporation any greater rights than the cor-
poration itself had. Here, from the circumstances of the
case, it may be inferred that the principal parties to the
transaction were Raymund and O'Bryan, and the relation
of the others to them merely that of employees. Nor do
we see anything in the nature of fraud in the terms of their
employment. As to Widaman, especially, it affirmatively
appears that the consideration rendered by him was in ex-
cess of the value of his stock, and, upon the evidence, that
it was even in excess of its par value. To such a transac-
tion no possible objection can be made. As to Bing-
ham, if this cannot be said, at least the contrary does
not appear, and until the contrary is shown the pre-
sumption is that the transaction was fair. (Code Civ. Proc.,
sec. 1963, subds. 1, 19, 20, 33, 39.) Here also the general
presumption was confirmed by the consideration that other-
wise the issue of the certificate would have been in contra-
vention of constitutional and statutory provisions (authori-
ties, *supra*), and, in the absence of circumstances tending
to inform him better, his assignee might justly rely on this
presumption. The case, therefore—as to both defendants—
comes within the application of what is said in *Kellerman*
v. *Maier,* 116 Cal. 422, 423, [48 Pac. 377], which is to the
effect that it is legitimate for the corporation to dispose of
its stock for full value received in land or property, or, as
in this case, in services. Nor is there anything in the de-
cision in *Vermont Co.* v. *Declez Co.,* 135 Cal. 583, [87 Am.
St. Rep. 143, 87 Pac. 1057], affecting this position. All that

is there held is that the issue of stock for part of its nominal value, or, in other words, the sale of stock at less than par, is not permissible. But, assuming this to be the law, the case considered in *Kellerman* v. *Maier* in the passage quoted, and the present case, come within the distinction expressed on page 586 of 135 Cal., [page 1059 of 67 Pac., 87 Am. St. Rep. 143], where it is said: "Had the case been the usual one where a road is constructed for a fixed sum of money and a definite amount of stock, it might, perhaps, have been held that the stock was fully paid; but the stock was given for a definite sum of money, and it was contended that it was the usual case of selling stock below par, and that no contract with the corporation could release the stockholder from his liability to creditors." The decision, therefore, does not affect the case of Widaman; nor, in the case of Bingham, does it appear "that the transaction was not fair, and that a reasonable equivalent was not given for the stock"; nor is there anything here to show or to lead us to suspect that there was a mere "simulated payment of such subscription," or that there was "any device short of an actual payment in good faith."

This disposes of the various points made by the appellants' counsel, except the last point of the appellant Widaman, which is that there is a material variance between the case alleged and found, and the proofs. This point—though perhaps by itself insufficient for reversal—is well taken. The action against Widaman is based upon the subscription, and from the findings and the evidence it appears that the contract of subscription (whatever may have been its terms) was executed. The judgment, therefore (if it could be otherwise supported), would have to rest simply, as in the case of Lord, upon the contract implied (as held in *Vermont Co.* v. *Declez Co.*, 135 Cal. 583, [87 Am. St. Rep. 143, 87 Pac. 1057]), to pay the full par value of the stock.

For these reasons, the judgment and order appealed from must be reversed. But there are other questions involved, antecedent to those discussed by the counsel, which must be determined with a view to the further proceedings in the case. These are: 1. Can an action be maintained by a creditor of a corporation upon a stockholder's liability otherwise than through the medium of an assessment by the cor-

poration, or by the court itself in the suit? 2. Assuming this question to be answered in the negative, will it be necessary in a creditors' bill against a corporation to make the stockholders parties? 3. Or, assuming the first question to be answered in the affirmative, can a suit be maintained by a creditor against a stockholder on his subscription liability without making all the stockholders parties, or excusing the absence of missing stockholders?

The first and second of these questions will be considered together. Under the constitution and statutes of this state, it is settled that there are two methods of proceeding by creditors of a corporation to collect their debts, to wit: 1. "Each stockholder may be compelled to pay to the corporation assessments to the full amount of his subscription to the capital stock of the corporation for the payment of creditors"; and 2. He will "be individually liable to each creditor for such proportion of his claim as the amount of stock held by such stockholder bears to the whole of the capital stock." (*Sacramento Bank* v. *Pacific Bank*, 124 Cal. 150, [71 Am. St. Rep. 36, 56 Pac. 787]; *Kimball* v. *Richardson-Kimball Co.*, 111 Cal. 395, [43 Pac. 1111].) With regard to the latter remedy, it is expressly provided by section 322 of the Civil Code that the action can be maintained by a creditor against a stockholder for his proportion of the debt "only." This seems clearly to imply that no action can be maintained by a creditor against a stockholder on his subscription liability directly; and hence, the right of a creditor to maintain an action of the kind now before us would seem to be denied by the express provision of the statute cited. This conclusion, we think, would be right, and the first question might very well be thus disposed of; but there are grounds upon which it may be rested independent of the statute.

As to the equitable remedy, until recent times the principles governing it and the mode of procedure were equally well defined. A suit may be maintained by the creditor of a corporation on behalf of himself and other creditors against the corporation to subject its assets to the creditors' lien. (*Wood* v. *Dumner*, 3 Mason, 308, [Fed. Cas. No. 17,944]; 2 Story's Equity Jurisprudence, sec. 1252.) Among these assets the unpaid subscriptions of stockholders are to

be regarded as part, and with reference to these the court will either compel the corporation to assess the stock in the amount necessary for the payment of its liabilities, or it will itself make the assessment; and in this proceeding—unless a personal judgment against a stockholder be sought—it will be unnecessary to make all the stockholders parties, the assessment, whether by the corporation or by the court, being conclusive upon them. (*Salmon* v. *Hamborough Co.*, 1 Cas. Ch. 204, cited, Thompson on Liability of Stockholders, sec. 16; *Glenn* v. *Saxton*, 68 Cal. 353. [9 Pac. 420]; *Glenn* v. *Williams*, 60 Md. 93.) Stockholders, however, under the ordinary rules of equity procedure, may be made parties, and as to those who have been served, or who appear, several judgments may be entered against them for the amounts for which they are assessed. (Code Civ. Proc., secs. 379, 382, 387, 389; Story's Equity Jurisprudence, secs. 64k, 65; *Harmon* v. *Page*, 62 Cal. 448.) The leading case on this subject was decided in the reign of Charles II, 'and it seems to be agreed that the doctrine has never been extended in England beyond the rule as above stated. Nor until recent times, has it been extended in this country. There are, indeed, some cases in which it has been held that a suit may be maintained by a single creditor directly against one or several stockholders; but this is confessedly an innovation in equity practice and seems to have grown out of a misapprehension of the resources of the existing practice, rather than from any necessity for the innovation. For the ordinary proceeding furnishes the most ample remedy to creditors that can be justly demanded; and at the same time—unlike the new practice—is free from being chargeable with a disregard of the rights of stockholders, and of the familiar principles upon which equity is commonly administered. This, I think, is a fair criticism of the cases alluded to, whose fault seems to be that they have left out of view the necessity of an assessment (required by every consideration of equity and common sense) to fix the liability of the stockholder; but it would be impracticable, with any due regard to brevity, to attempt to verify the criticism by a review of the cases. We will therefore confine our attention to the statutory provisions and authorities of this state, by which alone the case is to be determined.

By section 331 of the Civil Code, the directors of a corporation, after one-fourth of its capital stock has been subscribed, may levy and collect assessments upon the subscribed capital stock "in the manner and form and to the extent provided herein." By section 332 it is provided: "No one assessment must exceed ten per cent of the amount of the capital stock," except in the cases mentioned in the section, of which one is that an assessment may be made "for the full amount unpaid upon the capital stock," or such percentage as may be necessary "to meet its liabilities, or to satisfy the claims of its creditors." And by section 349, upon delinquency in the payment of the assessment, the board may elect to waive further proceedings under the statute and "to proceed by action to recover the amount of the assessment," etc. These provisions of the code enter into and constitute the terms of the contract. (*Union Sav. Bank* v. *Leiter*, 145 Cal. 702, [79 Pac. 441].) Hence, in the absence of an express agreement to the contrary, the promise of the stockholder is only to pay the amount of his subscription upon assessment, and until then no cause of action arises. (*Union Sav. Bank* v. *Leiter, supra; Welch* v. *Sargent*, 127 Cal. 81, 82, [59 Pac. 319]; *Shively* v. *Eureka Co.*, 129 Cal. 293, [61 Pac. 939]; *Ventura Ry. Co.* v. *Hartman*, 116 Cal. 260, [48 Pac. 65]; *Glenn* v. *Saxton*, 68 Cal. 357, 358, [9 Pac. 420]; *Harmon* v. *Page*, 62 Cal. 463, 464; *California Sugar M. Co.* v. *Schafer*, 57 Cal. 396.) It would seem to follow, therefore, that until the levy of assessment, either by the directors of the corporation, or by the court in lieu of the directors, no cause of action can arise either in favor of the corporation or its creditors; and also that, except in the manner indicated—that is to say, by an assessment either by the directors, or in the creditors' suit— no suit can be maintained by a creditor on the subscription liability directly against one or several stockholders. Nor is this an immaterial limitation upon his liability. For not only is the stockholder entitled to the interposition of the directors of the corporation, who are trustees for him, as well as for creditors, and whose duty it is to see that unequal burdens are not imposed upon him (*Union Sav. Bank* v. *Leiter*, 145 Cal. 702, [29 Pac. 441]), but he is also protected by the statutory provisions of the law, which forbid

him to be assessed, without an assessment of the other stock-
holders.   Nor is the case differenced where the court makes
the assessment.   For here the court simply performs the func-
tions of the corporate officers, and becomes itself a trustee
of the stockholders, as well as of the creditors.   It would
seem, therefore, even if the case be assumed to be otherwise
for the plaintiff, that the judgment was nevertheless pre-
mature.   There should have been an inquiry as to the amount
necessary to be assessed, and an assessment against all the
stockholders, whether present or absent.

On the other hand, there are some cases in this state in
which it has apparently been held that a direct judgment in
favor of creditors against several stockholders is admissible
(*Baines* v. *Babcock*, 95 Cal. 581, [29 Am. St. Rep. 158, 27
Pac. 674, 30 Pac. 776] ; *Potter* v. *Dear*, 95 Cal. 578, [30 Pac.
777] ; *Walter* v. *Merced Academy Assn.*, 126 Cal. 586, [59
Pac. 136] ; *Welch* v. *Sargent*, 127 Cal. 72, [59 Pac. 319] ;
*Tulare Sav. Bank* v. *Talbot*, 131 Cal. 45, [63 Pac. 172] ) ;
and this, as we have seen, is correct provided there first be
an assessment.   The actual decisions, indeed, go further, and
the judgments were affirmed, though there had been no assess-
ment.   But in none of these cases was the question as to the
necessity of an assessment considered, nor was the attention
of the court directed to the statutory provisions and the au-
thorities above cited, nor was the question of their effect con-
sidered.   In *Baines* v. *Babcock*, 95 Cal. 581, [29 Am. St. Rep.
158, 27 Pac. 674, 30 Pac. 776], indeed, the general question
is discussed in the briefs, and, in the brief of counsel for
the appellants Babcock and Collett, very   elaborately and
ably.   But the question as to the proper mode of procedure
and the necessity of an assessment was not considered by
the court.   Nor in the actual case was there any very press-
ing necessity that it should be.   For, out of the two thou-
sand five hundred shares of the stock of the corporation,
two thousand three hundred and seventeen were represented
by the defendants, and it was alleged in the complaint that
the remaining one hundred and   eighty-three   shares were
"mostly held in small amounts by nonresidents or insol-
vent persons."   But however this may be, the question
actually considered by the court was whether the objection
to the nonjoinder of the latter could be sustained, and it

was held, in effect, that the nonjoinder was excused. Upon the question under consideration here, all that is said is: "It is well settled that a judgment creditor, who has exhausted his legal remedies against a corporation, may maintain an action against its stockholders to recover, for the benefit of all creditors who may desire to come in and be made parties, the amount due upon unpaid subscriptions for stock, when the corporation neglects or refuses to collect the same." And it is further said: "The contention of appellants that this equitable remedy is superseded in this state by section 322 of the Civil Code, and that the only personal liability of the stockholder is that fixed by that section, is not tenable, and was so held by this court in *Harmon* v. *Page*, 62 Cal. 448." But referring to the case cited, it appears that all that was held there was that the jurisdiction of equity to entertain a creditors' bill against the corporation and stockholders to subject the assets of the corporation to the lien of the creditors was not devested by the personal liability imposed upon the stockholder by statute, and that the question under consideration was not there in any way involved. Nor is the language of the court in the principal case to be considered as going beyond the authority cited.

The case of *Hatch* v. *Dana*, 101 U. S. 205, is also cited by the court, and, though not cited to the point now under consideration, it apparently goes beyond the point for which it was cited, and probably had some influence on the mind of the court. The case, however, was an Illinois case, where by statute it is expressly provided: "Each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him, to be collected in the manner herein provided." And it is further provided: "Whenever any action is brought to recover any indebtedness against the corporation, it shall be competent to proceed against any one or more stockholders upon the stock owned by them respectively, whether called in or not, as in cases of garnishment." See *Alling* v. *Wenzel* 133 Ill. 264, [24 N. E. 551], where the statute is cited, though not fully. Accordingly, though the statute is not expressly referred to, the decision is placed upon the ground that: "A creditors' bill merely subrogates the creditors to the place of the debtor and garnishees the debt due to the defendant

corporation. It does not change the character of the debt attached or garnished." This was precisely in accordance with the Illinois law, and must be considered as having reference to that only. And it is the more requisite thus to construe the decision, because, if the proposition should be regarded as asserted generally, it would not be supported by any of the authorities cited—unless, perhaps, by the Georgia case cited from Wood's Reports, which does not seem to have been very carefully considered. Nor, however construed, can the decision be regarded as authority in this state, where there are express statutory provisions covering the whole subject of attachment, which it is said are to be regarded as "a substitute for a creditors' bill." (*Matteson etc. Mfg. Co.* v. *Conley,* 144 Cal. 485, [77 Pac. 1042].)

For these reasons we are satisfied that in this state creditors of a corporation can maintain a suit directly against a stockholder for his statutory proportion of the corporation indebtedness, only; and that to enforce his subscription liability otherwise than by means of a suit against the corporation, and an assessment, would not only be an unnecessary, and therefore unwarranted innovation upon the established equity practice, but it would also be in direct contravention of the provisions of section 322 of the Civil Code, and of the decisions of the supreme court in *Union Savings Bank* v. *Leiter,* 145 Cal. 696, [79 Pac. 441], and the numerous other cases cited *supra.* This conclusion is also confirmed by the decision in *Welch* v. *Sargent,* 127 Cal. 73, [59 Pac. 319], where it is held that a stockholder cannot pay the debt of a corporation in discharge of his liability upon an unpaid subscription to the stock, which, it is said, "is an asset of the corporation" and "payable to the corporation and no one else." It can hardly be that a cause of action can exist against one which he is not at liberty to pay. And, in this state, paid-up stock may be assessed by the corporation (*Santa Cruz Ry. Co.* v. *Spreckles,* 65 Cal. 193, [3 Pac 661, 802]; *Vermont Co.* v. *Declez Co.,* 135 Cal. 583, [87 Am. St. Rep. 143, 87 Pac. 1057]), it is difficult to perceive, if such an action can be maintained, why it should be limited to the unpaid subscription.

On the other hand, reverting to the third question, if we could assume that a suit could be maintained by a creditor

against a stockholder without the intervention of an assessment by the corporation, or by the court, then it would be clear that all the stockholders should be parties, ''at least so far as they can be ascertained,'' or, as practicable (*Hatch* v. *Dana,* 101 U. S. 205, cited; *Baines* v. *Babcock,* 95 Cal. 590, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776]) ; and that none could be omitted ''unless some valid excuse is shown for not bringing them in'' (Thompson on Liability of Stockholders, sec. 353 et seq.; Code Civ. Proc., secs. 379, 389). But assuming that the obvious necessity (in the absence of an assessment) of bringing in all the stockholders before the judgment can be rendered against one (Code Civ. Proc., secs. 379, 382, 389) may be thus qualified, the rule can have no application to the present case. For here, though it appears that one of the stockholders (O'Bryan) absconded some four or five years ago, it does not appear that he cannot now be found; and it affirmatively appears that the other stockholders (Rowan and Raymund) were present. No reason appears, therefore, why they should not be joined, and under the provision of the code cited they should be. By joining Raymund only, the trust fund subject to the claims of the plaintiff and intervener would be increased by more than $24,000, or, in other words, would be multiplied thirteen times, and a very small assessment upon each share would be sufficient to satisfy the claims sued on. And even should the judgment be against them jointly for the amount due, and the smaller stockholders have to pay the judgment, they would be assured of their right to contribution from the others. Under these circumstances, to impose the whole debt on two small stockholders, to the exclusion of the principal debtors, would not be justified by any principle of equity with which we are acquainted. In this connection, it will be proper to say we are not satisfied of the correctness of the proposition of the court, in *Hatch* v. *Dana, supra,* that ''the liability of a stockholder for the capital stock of the company is several, and not joint''—at least, as applicable to this state. After the assessment it is ''several.'' But before that the liability is only contingent, and can hardly be said to be either joint or several; though in its characteristics it more nearly resembles obligations of the former kind.

For the reasons given, the judgment and order appealed from must be reversed, and further proceedings had in accordance with the views expressed in this opinion.

Allen, J., concurred.

GRAY, P. J.—I concur specially in the reversal of the judgment and order. I do not think there is any analogy, however, between this case and the case of a creditor seeking to collect his debt from the debtor of his debtor by attachment. I am strongly of the opinion that the creditors may sue the stockholders of a bankrupt corporation directly and without any effort to compel an assessment by the corporation, and believe that the liability of the stockholders to such creditors is several as well as joint, and that it is not necessary to join all the stockholders in such a suit. (*Walter* v. *Merced Academy Assn.*, 126 Cal. 582, [59 Pac. 136].)

A petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on December 29, 1905, and the following opinion was then rendered:

The COURT.—In denying such petition, it is proper to say that such portions of the opinion of said court of appeal as are devoted to the discussion of such questions as, it is said in the opinion, "must be determined with a view to the further proceedings in the case," are concurred in by only two of the justices of said court of appeal, and, consequently, do not constitute "the law of the case" for further proceedings.