JOHN CONLEY ET AL. *vs.* HORATIO A. HUNT ET ALS., EXECUTORS.

First Judicial District, Hartford, March Term, 1920.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Under the law of California a stockholder who received his stock in return for property conveyed by him to the corporation, is not liable for corporate debts if the property so conveyed was worth the par value of the stock, or if it appears that the parties to the transaction acted in good faith and without fraud or intentional overvaluation of the property received in exchange for the stock.

In the present case the trial court found that both of these conditions were satisfied, and therefore that the plaintiffs, judgment creditors of the corporation, could not recover of the defendant, who

had purchased his stock from the original transferee shortly after the company's incorporation. *Held* that whatever might be said as to what the evidence respecting value established or failed to establish, the finding as to the good faith of the parties in giving and accepting the property in full payment for the stock issued, was amply justified, and sufficient, therefore, to defeat any recovery by the plaintiffs under the law of California.

By the law of that State the transferee of shares of corporate stock is subject to the same liability to creditors of the corporation as the original holder of the stock.

It is legitimate for a corporation in California to dispose of its stock for full value received, whether in cash, property or services; and such a transaction is presumed to be fair until the contrary is shown.

Argued March 2d — decided April 17th, 1920.

ACTION to recover the alleged unpaid par value of shares of the capital stock of an oil company issued by it in payment for its oil lands, and transferred by the original holders to the defendants' testator, brought to and tried by the Superior Court in Windham County, *Keeler, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs. *No error.*

The defendants are executors of the will of Edwin Milner, who died February 19th, 1914, possessed of six hundred and sixty shares of the Babcock Oil Company. The company was incorporated under the laws of Maine on or about February 1st, 1910, for the sole purpose of doing business in California. Its purposes were described at length in the certificate of incorporation. The first few lines of this description read as follows:—

"To buy, own, sell and lease petroleum lands; to locate petroleum, gas and other mineral lands under the laws of the United States and the laws of the State of California; to drill and bore wells for oil, water, gas or any other substance; to buy, sell, own, lease, construct and operate oil wells and gas machinery,

tanks, and pipe lines, and to buy, sell, own and lease all necessary lands, buildings and personal property in connection therewith and necessary for said purposes; to buy, own, sell, lease, construct and operate factories, machinery, tanks and pipe lines for the refining and distilling and distribution of petroleum oils, gas and other hydrocarbon substances and to manufacture all kinds of hydrocarbon substances or mixtures thereof." Its capital stock was $500,000, divided into 5,000 shares of $100 each. Its organizers were Harrison B. Huntoon and William C. Huntoon and one Murdock, their attorney, all of Providence, R. I. All of its capital stock was issued to the Huntoons as fully paid, in return for their conveyance to the company of leasehold rights in a quarter section of land in the oil fields of Kern County, California, then being developed for the production of petroleum, together with personal property thereon, consisting of machinery and appliances designed for the development and operation of oil lands. About two months after its incorporation Milner purchased from the Huntoons 660 shares of the stock which had been issued to them, and transfer of these shares was thereupon made to him. He remained their owner until his death.

Upon the organization of the company the two Huntoons and Murdock became its directors, and it commenced and prosecuted the business for which it had been incorporated upon the land in California, the leasehold of which had been conveyed to it as aforesaid. In the prosecution of this business and in the development of the property for the production of oil, the company expended a considerable sum of money; but the production and financial results proved disappointing.

On February 11th, 1910, the company mortgaged

the property conveyed to it by the Huntoons, to the plaintiffs, then and ever since residents of California, to secure its notes for $30,000. In December, 1912, the plaintiffs foreclosed this mortgage and obtained the deficiency judgment upon which the present suit is based. Execution was issued upon the judgment and was returned wholly unsatisfied.

The property conveyed to the company by the Huntoons was of the market value of $500,000 as a development prospect at the time of such conveyance. The after-development of the property showed that it was not actually of such value, and that it was of only nominal value over and above the charges and incumbrances on it. The directors of the company believed, when the conveyance was made and the stock issued, that it was worth at least the par value of the stock issued for it, and they were justified in believing that it would, when developed, be worth much more than the total capital stock of the company. All parties to that transaction acted in good faith and with no intention to accept the property in payment for stock at an over-valuation.

After Milner's death the claim of the plaintiffs was duly presented to the defendants, the executors of his will. It having been disallowed by them, this action was brought within the time provided by statute.

Other facts found having no relation to the questions discussed in the opinion, although important as bearing upon other phases of the case involved in the appeal, are omitted.

*Arthur T. Keefe,* for the appellants (plaintiffs).

*Hadlai A. Hull* and *Frank L. McGuire,* for the appellees (defendants).

PRENTICE, C. J.   The plaintiffs, creditors of a Maine corporation, having obtained a judgment against it in a California court upon an obligation incurred in that State in the conduct of business therein carried on by it, and having, upon execution issued upon that judgment, failed to secure satisfaction of it, seek such satisfaction against the estate of one who, during the last few years of his life, was the owner of a block of its capital stock purchased by him from another person to whom, at the time of the organization of the corporation, it was originally issued in return for property given and received as having a value equal to the par value of the stock.   It is conceded that the law of Maine does not authorize the maintenance of the action under the conditions here presented.   The plaintiffs' appeal is to the California law and to that alone.   The basis of that appeal is that the provision in the corporation's charter expressive of its purpose to engage in business in California, together with the fact that the plaintiffs' claim upon which they obtained their California judgment was created in the conduct of such business, brings the situation within the reach of the law of that State.   If this contention of the plaintiffs, made upon the claimed authority of *Pinney* v. *Nelson*, 183 U. S. 144, 22 Sup. Ct. 52, and *Thomas* v. *Matthiessen*, 232 U. S. 221, 34 Sup. Ct. 312, is well founded, as we may assume that it is, without deciding, we are next met by the question, fundamental to the plaintiffs' right of recovery, whether or not the conditions presented by this record are such as to meet the requirements of the law of California governing a stockholder's liability for corporate debts, where his stock was issued for property less in actual value at the time of issue than the amount of the par value of the stock, or which proved to be of less value than such par value.

Fortunately for us the law of California, in so far at least as it has present pertinence, is neither obscure nor doubtful. An owner and holder of stock by transfer is subject to the same liability as he would be were he the person to whom the stock was originally issued. *Vermont Marble Co.* v. *DeClez Granite Co.*, 135 Cal. 579, 587, 67 Pac. 1057. It is legitimate for a corporation to dispose of its stock for full value received, whether in cash, property or services. *Turner* v. *Fidelity Loan Concern*, 2 Cal. App. 122, 132, 83 Pac. 62, 70; *Kellerman* v. *Maier*, 116 Cal. 416, 422, 423, 48 Pac. 377; Civil Code of California, § 359. Such a transaction is presumed to be fair until the contrary is shown. *Turner* v. *Fidelity Loan Concern*, 2 Cal. App. 122, 132, 83 Pac. 62, 70.

Where stock is issued for property or services and not for cash, the rule governing the liability of stockholders to creditors is that defined in the so-called "good faith rule," as distinguished from the "true value rule" prevailing in some jurisdictions. "By this rule [i. e. the good faith rule] the good faith of the valuation and not the true value of the property, labor, or services, determines whether the stock is fully paid as against creditors. If the directors have acted in good faith and without actual fraud or intentional overvaluation, the stock is to be deemed fully paid up, even as against creditors, although it may afterward appear that, through mistake, accident, or error of judgment, there has in fact been an overvaluation." 14 Corpus Juris, § 1489. The adhesion of the California courts to this rule has been unequivocally declared in several recent cases. *Hasson* v. *Koeberle* (Cal.), 181 Pacific Rep. 387, 388; *Harrison* v. *Armour*, 169 Cal. 787, 790, 147 Pac. 1166; *Herron Co.* v. *Shaw*, 165 Cal. 668, 672, *et seq.*, 133 Pac. 488. The decision in the first named of these cases, not

yet officially reported, has been handed down since the judgment below was rendered, and removes any possibility of doubt as to the attitude of that court by its restatement of principle as follows: "Looking, therefore, to the California law, we find it undisputed that, where stock is sold for money and the purchase price is less than the par value of the stock, the difference between the par value and the amount actually paid is the measure of the stockholders' liability to creditors, and that in cases where the stock is not sold for cash, but it is issued for real or personal property having no generally defined 'value, the rule is that where the corporation and stockholder have agreed upon a given valuation for the property transferred, such valuation is binding and conclusive unless it is fraudulent in purpose or effect. But if the parties have put upon the property, a valuation in excess of what they knew or believed to be the true value, this is a constructive fraud upon the creditors, and the stock would be deemed paid only to the extent of the actual value of the property received in exchange for it.'" p. 388.

It thus appears that under the California law neither the Huntoons nor Milner, their transferee, could have been held responsible to the company's creditors for nonpayment in full for the stock issued to the former in the event that it should appear, either (1) that the stock was paid for in property having a value equal to the par value of the stock, or (2) that the parties to the transaction of issue acted in good faith and without fraud or intentional overvaluation of the property received in return for the issue.

The court has found that both of these conditions were satisfied. It has found that the property was of the market value of $500,000 at the time it was conveyed to the company by those to whom its stock

was issued, and has further found that the acceptance of the property in full payment for the stock issue was made in the utmost good faith and in the belief on the part of the participants, entertained after reasonable investigation and inquiry, that it possessed a value at least equal to the par value of the stock. The plaintiffs, however, have asked that the finding be corrected in respect to both these matters, as well as in other particulars unrelated to the aspect of the case under present consideration. Whatever may be said as to what the evidence on the question of value fairly established or did not establish, there can be no manner of doubt that the finding of good faith, which was to be prima facie presumed, was amply justified. And if it be so, as the plaintiffs claim, that the existence of good faith implies the exercise of reasonable investigation and inquiry as its foundation, the finding that such investigation and inquiry was made is not without reasonable support in the evidence. As the finding of good faith must stand, all foundation for a plaintiffs' judgment is gone, and all the other questions raised by the appeal, whether they relate to corrections of the finding or to the disposition of the case upon the facts found, are rendered unimportant.

There is no error.

In this opinion the other judges concurred.